PEOPLE v. ALBRIGHT.

CRIMINAL LAW—WIFE DESERTION — CONSTITUTIONAL LAW — CONTINUING OFFENSES.

   Act No. 144, Pub. Acts 1907, making wife desertion coupled with wilful failure to provide maintenance a felony, does not affect an act of desertion which took place before its enactment, although the desertion is followed by continuing neglect to provide maintenance; since the desertion could not be made a criminal act by a statute subsequently enacted without a violation of the constitutional prohibition against *ex post facto* laws.    Const. of 1850, art. 4, § 43.

Exceptions before judgment from Ottawa; Padgham, J.  Submitted April 22, 1910.  (Docket No. 146.)  Decided May 7, 1910.

Ferdinand Albright was convicted of deserting and abandoning his wife.   Reversed, and respondent discharged.

*Walter I. Lillie*, for appellant.

*John E. Bird*, Attorney General, *Charles W. McGill*, Assistant Attorney General, and *Corie C. Coburn*, Prosecuting Attorney, for the people.

The respondent was placed upon trial in the November term, 1909, of the circuit court, under an information which charged that he had on, to wit, May 20, 1909, at the city of Grand Haven, deserted and abandoned his wife, one Gertrude Albright, and without providing necessary and proper shelter, food, care, and clothing for the said wife, and that he had continued in such desertion and abandonment from said May 20, 1909, until the present time, contrary to the form of the statute, etc. The prosecuting attorney, in his opening to the jury, stated that he would show that the respondent and his wife were married February 7, 1905, while the respondent was under arrest for bastardy on complaint of said Gertrude; that they had never lived together after such marriage, but that he had deserted and abandoned her immediately, and that respondent had not provided his said wife with proper food, care, clothing, and shelter at any time, from the time of such marriage to the time of the trial, and that such desertion and abandonment had continued from said February 7, 1905, to the present time.

Evidence was offered tending to support the charge in the information. There are two assignments of error which allege that the court erred in ruling upon the introduction of evidence. As neither of the rulings was excepted to, and as the objections were without merit, we shall not consider them.

At the close of the evidence, counsel for the respondent moved for a directed verdict of not guilty, for the following reasons:

(1) That the proof shows that the desertion took place on the 7th day of February, 1905, if at any time, and that he (respondent) has never lived with her from that day until this, and in fact has never had anything to do with her, except a few conversations when he was under arrest.

(2) That the act in force at the time this desertion and abandonment took place was Act No. 39, Pub. Acts 1903, which contained in its provisions other clauses than Act

No. 144, Pub. Acts 1907, to wit, that the wife must be a burden upon the public, and the respondent must leave the State of Michigan.

(3) That Act No. 39, Pub. Acts 1903, was repealed by Act No. 144, Pub. Acts 1907, and there was no reserving clause whatever.

The court overruled the motion, and allowed the information to be amended so as to include the date of February 7, 1905, and from thence down to the 20th day of May, 1909, and to the present time, to which ruling respondent's counsel excepted.

The respondent then requested the court to charge the jury as follows:

"(1) That when a person has been arrested for bastardy, and then marries the girl, and never lives with her a minute, it is not the desertion and abandonment meant by Act No. 144 of the Session Laws of 1907; for that statute only applies to a husband and wife who actually lived together as husband and wife, for some period of time, and then the husband deserts and abandons the wife.

"(2) That if you find from the evidence in this case that the complaining witness, Gertrude Albright, and the respondent, Ferdinand Albright, never lived together after the marriage—not even a minute—was performed, and further find from the evidence in this case that after the marriage was performed, he immediately left her, and has never lived with her as his wife, then I charge you that your verdict will be not guilty."

Both of said requests were refused. The court charged the jury that, in order to convict the respondent, it must appear from the evidence beyond a reasonable doubt that he abandoned and deserted his wife on February 7, 1905, and that he continued that abandonment and desertion to the present time, without providing necessary and proper shelter, food, and clothing for her; that the term "abandonment" has been defined under this statute as being the act of the husband who leaves his consort wilfully, and with an intention of causing perpetual separation; that desertion is used in the same statute, "any person who deserts and abandons his wife and children;" that these

two words " desert " and " abandon " are not synony-
mous; they do not mean the same thing; desertion is
the act, and abandonment covers the intent; that before
the respondent could be convicted the jury must find, be-
yond a reasonable doubt, that this act of abandonment,
at the time, if he did abandon her, was with the intent
that it should be perpetual as above defined, and that he
intended never to support her, or live with her again, or
furnish her with proper shelter, food, etc.   In other words,
that he entirely abandoned her as his wife, the same as
though he had no wife.   The circuit judge concluded his
charge in the following words:

" Did this respondent on the 7th day of February, 1905,
abandon and desert this woman, under the definition I
have given you of abandonment and desertion, and did
that abandonment and desertion continue from thence
down to the present time?   In other words, has it con-
tinued from that time up to the present?   Not only this,
did he abandon and desert her at that time, but you
should find that he did not provide necessary and proper
shelter, food, and clothing for his wife.   It would be as
necessary to show that as much as the abandonment; the
two go together.   He must not only abandon and desert
his family, but he must leave them under such circum-
stances as the statute states."

The respondent was convicted, and the case is here
upon exceptions before sentence.

STONE, J. ( *after stating the facts*).   In our opinion
the conviction of the respondent should be set aside, and
the respondent discharged.   Act No. 144, Pub. Acts 1907,
is entitled—

" An act to prevent the desertion and abandonment of
wife or children by persons charged by law with the
maintenance thereof; to make such abandonment and de-
sertion a felony," etc.

The elements of the offense defined by section 1 of the
act are desertion and abandonment without providing
necessary and proper shelter, food, etc.   It is unlike the

Wisconsin statute, referred to in 1 McClain on Criminal Law, § 58, cited by the prosecuting attorney, in this: That statute made it a misdemeanor for a husband to abandon his wife, leaving her in a destitute condition, and *also* made it a misdemeanor if a husband, being of sufficient ability, refused or neglected to provide for her. In the opinion in *State* v. *Witham*, 70 Wis. 473 (35 N. W. 934), a case arising under the Wisconsin statute, it is pointed out that the act provides for *two* cases; that the penalty of the act is incurred by the abandonment, leaving the wife destitute, and is *also* incurred by a wilful refusal to provide for her; that while in that case the abandonment occurred before the law took effect, the wilful refusal to provide continued to the time of trial. The Michigan statute does not make the refusal, or neglect of the husband to provide necessary shelter, etc., a felony. It makes desertion and abandonment, plus such refusal or neglect to provide, a felony.

In the case at bar the desertion and abandonment occurred in February, 1905. In so far as the statute we are considering is concerned, it was an innocent act; at least it was not a criminal act. It could not be made a criminal act by a statute thereafter enacted. If it could be assumed that the legislature intended to make the act of 1907 apply to conduct which took place in 1905, an assumption which is, of course, purely gratuitous, the act of 1907 would be an *ex post facto* law. In this view of the case it is unnecessary to decide the other questions raised and discussed.

The conviction is set aside, and respondent discharged.

Ostrander, Hooker, Moore, and Blair, JJ., concurred.