PEOPLE *v.* DUNSTON.

1. CRIMINAL LAW—DIVORCE—DESERTION—ABANDONMENT.
   Desertion or abandonment of wife and family within the meaning of Act No. 144, Pub. Acts 1907, includes both the idea of a wilful and perpetual separation by the husband and failure to support.

2. SAME—ALIMONY—WIFE DESERTION—HUSBAND AND WIFE.
   After respondent's wife had procured a divorce from him, awarding to her the custody of their minor children, and requiring him to furnish a stated sum each week for the support of the two children, his failure to comply with the order as to payments did not constitute abandonment under Act No. 144, Pub. Acts 1907.

Exceptions before sentence from Oakland; Smith, J. Submitted November 14, 1912. (Docket No. 130.) Decided December 17, 1912.

William E. Dunston was convicted of deserting and abandoning his minor children. Reversed: respondent discharged.

*Carl H. Pelton,* Prosecuting Attorney, and *Clinton McGee,* Assistant Prosecuting Attorney, for the people.

*Andrew L. Moore,* for respondent.

STEERE, J. This case involves the question of whether or not respondent is liable to criminal prosecution for desertion and abandonment of his children, as defined in Act No. 144 of the Public Acts of 1907; he having previously been divorced from his wife, to whom the court had granted possession and custody of their minor children, decreeing an allowance to be paid to her for said children's support, which allowance respondent has failed to fully pay. Respondent was arrested, prosecuted, and convicted under said Act No. 144 in the circuit court of Oakland county, and has removed the proceedings to this

court for review, on exceptions and assignments of error after verdict and before sentence.

The complaint in this case was made by his former wife, Margaret Dunston, to whom he was married on February 8, 1904, and from whom he was divorced January 9, 1909, by a decree in her favor under a bill alleging cruelty, drunkenness, and nonsupport. By the terms of said decree she was given possession and custody of their minor children, Ruth Dunston and William Dunston, aged, respectively, 4 and 2 years; it also being provided in said decree that defendant must pay to his said wife the sum of $1.50 per week for the support of each child until it should arrive at the age of 14 years. The testimony discloses that until March 1, 1910, defendant was absent from the State and made no payments, but on his return he entered into an agreement with his divorced wife that the back payments would be waived by her, provided he then commenced paying according to the decree and continued to pay from that time on. Following this agreement, he paid to her the sum of $144 in all; the last payment being made on April 6, 1911.

On July 31, 1911, his former wife made the complaint upon which warrant was issued in this case, as before stated. On preliminary examination he was held to the circuit court for trial, and on December 5, 1911, he was there found guilty of the offense charged, by the verdict of a jury rendered pursuant to a charge of the court concluding as follows:

"So I say to you, gentlemen, while I am not directing a verdict, that you must retire to the room and consider the verdict yourselves; but I say to you, you ought to convict the respondent in this case upon these facts, because I believe the facts do render him liable under the statute."

The information filed against respondent charged that he—

"On or about the first day of May, 1911, * * * did

desert and abandon his minor children under 15 years of age, to wit, Ruth Dunston, of 6 years of age, William Dunston, of 4 years of age, without providing necessary and proper shelter, food, care, and clothing for them, contrary to the form of the statute," etc.

When arraigned in the circuit court, respondent stood mute, and a plea of not guilty was entered in his behalf by order of the court. On the trial, by direction of his counsel, he introduced no testimony. Neither he nor his counsel took any active part in the trial, except that, under the express understanding that no rights should be waived in so doing, his counsel briefly cross-examined the people's witnesses to bring out certain of the facts contained in the statement of this case, and by pertinent objections, exceptions, and motions saved the points desired for review.

It was the testimony of complaining witness, Margaret Dunston, that she had made no demand on defendant other than for the amount decreed on granting her divorce, that the last payment was April 6, 1911, since which he had contributed nothing towards the support of their children, and that she made the complaint because he had failed to make the payments provided for in the decree. It also appeared that the children were not destitute, or liable to become a public charge, or that complainant's people, with whom she lived, were unable or unwilling to assist her.

At the conclusion of the people's case, respondent's counsel requested the court to direct a verdict in his favor, for the reason that the testimony introduced only showed a failure on his part to pay all of the money which he was ordered, by the court of chancery in the divorce proceedings, to pay; that the wife had a complete and adequate remedy by contempt proceedings in the chancery court; that the word "desertion," as used in the criminal statute under which respondent was prosecuted, meant the act of the husband leaving his wife and children wilfully, with the intention of causing perpetual separation, and inasmuch as his children were taken from

him by a decree of the chancery court he could not be held guilty of deserting or abandoning them within the meaning of the statute.     This request was denied, as was also a motion for a new trial based on substantially the same grounds.

The offense of desertion and abandonment, as defined in said Act No. 144, is made a felony, punishable by sentence to State prison for from one to three years.     That crime is charged in the information in this case to have been committed by respondent on or about May 1, 1911, at the village of Clarkston, Oakland county.     He was then living in Detroit, Wayne county.     The children were living at Clarkston with their mother, to whom they had been given by the court.     Though the date of the offense is charged with a videlicet, which would not bind the prosecution to the exact time stated, no complaint was made of respondent's misconduct prior to his last payment on April 6, 1911, and all the testimony is launched against his default subsequent to the latter date.     The complaining witness was not then his wife.     He had no right to the custody or company of his children, no control over them, and could not even legally visit them without her permission.     By the former decree, dissolving the marriage ties and awarding the children to the mother, the legal entity of the family life and relations, with him as the head of the household, was destroyed, rightfully and through his fault, we must assume, but on the initiative of his wife.     His family rights ended as to her, and, for the time being at least, as to his children.     She became a single woman, with the rights of a surviving parent, as fully as though the father had been taken by death.     She became solely entitled to the custody, parental pleasure of association and companionship, control, services, and earnings of their minor children, which otherwise belonged to the father separately or the parents jointly.     He was divested of all paternal rights.     His paternal duties, which survived, were defined by the decree of a court of chancery.     They could be enforced in a civil action and

by punitory proceedings for contempt in disobeying the order of the chancery court.

In the absence of a provision in the decree requiring contribution by the father, even his civil liability for the support of minor children, unconditionally awarded to the mother, has been a mooted question. In Keezer on Marriage and Divorce, § 329, it is said:

"The party to whom the custody of children is awarded must support them. But where no award is made as to the custody of children, the liability of the father to support his minor children still continues."

This court has held that, where the custody of a child is given to the mother, a third party, supporting the child at her request, cannot recover therefor in an action of assumpsit against the father, restricting the rule, however, to the particular facts in that case; the party bringing the action having married the divorced mother of the child. *Johnson* v. *Onsted*, 74 Mich. 437 (42 N. W. 62). In *Finch* v. *Finch*, 22 Conn. 411, it was held, by a divided court, that a divorced wife, awarded the custody and control of their minor children, could not, in the absence of a provision in the decree of divorce requiring contribution from him, recover from the father for the support and education of such children. In Rodgers on Domestic Relations, § 503, the general rule is stated as follows:

"The sundering of the marriage tie between the father and mother does not relieve the parent of his legal duty to support his children, * * * and a wife who has been divorced from her husband by reason of his fault, and who has been awarded the custody of the children, may maintain an action against the divorced husband, in any court having competent jurisdiction, for necessaries and support furnished such children by her. * * * That there are respectable authorities at variance with this contention must be admitted. But it is confidently believed that the better reasoning, as well as the pronounced weight of authority, is to the contrary."

This question is only pertinent here for the light it may

throw on the legal status of respondent at the time he is charged with the felony defined in said Act No. 144, and his criminal turpitude in failing to make the payments for support ordered by the chancery court in the divorce proceedings. Said act has been twice before this court for consideration. In *People* v. *Stickle*, 156 Mich. 560 (121 N. W. 498), the act was held constitutional; but the case was reversed on the ground that the trial court did not, in charging the jury, give to the words " deserts " and "abandons" the meaning which the statute imports. It was there said:

" Desertion of one by the other means more than going away, more than separation. * * * 'Abandonment' is defined as:

" 'The act of a husband or wife who leaves his or her consort wilfully and with an intention of causing perpetual separation.' 1 Bouvier's Law Dictionary, p. 2.

" The same author defines 'desertion' as 'the act by which a man abandons his wife and children, or either of them.' * * * Respondent was entitled to have the jury instructed * * * that 'abandonment or desertion under the statute, means to separate from, wrongfully, without intention of again resuming marital relations.' "

In the case at bar, respondent had already been separated from his wife and children by the decree of a court. He was a thing apart from them. He had no right to, and could not if he wished, resume marital or family relations with them. There only existed the obligation to contribute to the wife for support of the children.

In the case of *People* v. *Albright*, 161 Mich. 400 (126 N. W. 432), respondent was charged under this statute with deserting and abandoning his wife on May 20, 1909. The proof showed that the desertion took place February 7, 1905, prior to the enactment of the statute under which he was prosecuted. This court there held that the statute does not make subsequent refusal or neglect to provide necessary shelter, etc., standing alone, a felony; that,

to constitute the offense, desertion, abandonment, and refusal or neglect must contemporaneously combine; that, the desertion and abandonment having occurred in 1905, the offense could not be considered as committed in 1909, by reason of the then refusal or neglect to provide necessary shelter, etc.

Applying the construction of the statute in those cases to the facts in this case, and conceding that at the time charged, and to which the testimony was directed, respondent neglected or refused to provide necessary and proper shelter, food, care, and clothing for his children, there is no proof that he at that time separated himself from, deserted, or abandoned them, within the meaning of the statute; but, on the contrary, he was apart from them, and his legal status was such that it was impossible for him to do so. Whatever his culpability and legal liability under other laws may be, we are constrained to hold that the facts proven by the prosecution in this case do not constitute the offense charged under the statute in question.

The conviction must be set aside, and respondent discharged.

MOORE, C. J., and MCALVAY, BROOKE, STONE, OSTRANDER, and BIRD, JJ., concurred. KUHN, J., did not sit.