## PEOPLE *v.* SCHELSKE.

1. DESERTION—CRIMINAL LAW—STATUTES—HUSBAND AND WIFE—INTENT.

Where a respondent accused of deserting and abandoning his wife and minor child lost his position in 1907, and, against the desire of his wife, found employment upon the farm of his parents, returning at the end of the week to visit the family, and where, during his absence after his second visit, his wife moved to the home of her father nearly a mile away, and remained there, and both parties retained keys of the homestead and returned occasionally to it, and it appeared that the respondent called upon his wife a number of times after her removal until in 1912, when such visits ceased, also that he only provided $39 during the intervening period for support of her and child, the trial court was not in error in declining to direct a verdict for the respondent upon his motion and contention that the proofs showed desertion prior to the date when Act No. 144, Pub. Acts 1907, took effect.

2. SAME—INTENT TO ABANDON—SUPPORT.

It is an essential element of the crime of abandonment that a permanent separation was intended. As long as the husband was making contributions to the support of his family it could not be said that he intended to abandon them.

3. SAME—NONSUPPORT—INTENT.

*Held,* also, that the jury were warranted in determining that after respondent ceased to furnish support for his family he became guilty of the offense of desertion as defined by the statute.

4. SAME—STATUTES—REPEAL—SAVING CLAUSE.

Although the accused contended that he had abandoned his family before Act No. 39, Pub. Acts 1903, had been repealed, and that he could not be prosecuted under the statute relating to desertion, as amended by Act No. 144, Pub. Acts 1907, because it contained no saving clause covering pending prosecutions, he was rightly convicted under
187 Mich.—32.

the later statute by the jury, that found, as instructed, that he committed the offense after the later act took effect.

5. SAME—EVIDENCE—ASSAULT—MISCONDUCT OF PROSECUTOR.

Although it did not appear that certain questions asked by the prosecutor as to trouble that respondent had had with his father and whether or not he had assaulted his father because of a controversy between them over respondent's family difficulties were material, the action of the prosecutor in asking questions relative thereto was not such prejudicial error as to require the reversal of the conviction, as it was made to appear that what· was done by respondent was in defense of his wife and not against her.

6. SAME — EVIDENCE — IMMATERIAL TESTIMONY — OTHER PROSECU- TION.

An attempt on the part of the prosecutor to put in evidence a warrant and other proceedings in the prosecution for the purpose of showing that respondent had made an agree- ment to settle matters between himself and wife in con- sideration that the prosecution be dismissed, that he failed to carry out the settlement, where the court admitted the evidence·for the purpose of showing certain dates concern- ing which various witnesses had given testimony, did not prejudice respondent and it was not error to permit the proof to stand as substantive evidence of the dates, not as proof of the facts desired to be shown.

7. SAME—TRIAL—CHARGE—ELEMENTS OF OFFENSE.

Instructions to the jury as to the grounds upon which con- viction could be based were not erroneous where the court charged that before the respondent could be convicted of the offense they must be satisfied beyond a reasonable doubt, that he not only refused to provide necessary and proper shelter, food, care, and clothing for his wife and child, but that he wilfully and unlawfully deserted and abandoned them; that this meant more than going away or a mere separation; that abandonment and desertion meant to be separated from his wife wrongfully and with the intention of not resuming the marriage relation; and, further, that the offense consisted of two elements, of (1) desertion, and (2) following the same up by neglect- ing to provide proper support.[1]

[1] As to what amounts to nonsupport by husband within criminal statutes, see note in 49 L. R. A. (N. S.) 588.

8. SAME.

> No error occurred in the instructions to the jury where,
> after having advised the jury that the offense must in-
> clude as a necessary element failure to provide necessary
> food, shelter, and clothing, the trial judge charged that
> the burden was upon the people to satisfy the jury of the
> two propositions: the fact of desertion, and the fact of
> abandonment. The omission of some of the elements stated
> in the prior charge was not so misleading as to prejudice
> the rights of the accused.

Exceptions before sentence from Van Buren; Des Voignes, J. Submitted June 17, 1915. (Docket No. 104.) Decided July 23, 1915.

Albert F. Schelske was convicted of desertion. Affirmed.

*Grant Fellows,* Attorney General, *Earl L. Burhans,* Prosecuting Attorney, and *L. M. Phelps,* Assistant Prosecuting Attorney, for the people.

*Thomas J. Cavanaugh,* for respondent.

KUHN, J. The respondent is charged by the information filed in this case with having violated the provisions of Act No. 144, Public Acts 1907. It is specifically alleged that on November 1, 1912, and on divers days between that date and October 3, 1914, he wilfully and unlawfully deserted and abandoned his wife and minor child without providing necessary and proper shelter, food, care, clothing, etc. He was found guilty, and the case is brought here on exceptions before sentence.

The respondent and the complaining witness, his wife, were married in 1899, later divorced, and remarried in 1905. They lived in respondent's house in South Haven until the spring of 1907, when the respondent, who was a piano tuner by trade, lost his position. After discussing with his wife the situation

and the course they should pursue, he went, against her wishes, to the farm of his father at Grand Junction (which is near South Haven) on April 25th, to obtain employment. He returned to South Haven to visit with his family the next two week-ends, and on May 7th his wife moved to her father's home near Grand Junction, about three-fourths of a mile from where respondent was living, without any warning to him. She has remained there ever since. The home in South Haven is still furnished as it was then, and they have each stayed in it on occasional separate trips to South Haven, each having a key to the house.

Save for small contributions made by the respondent, he has not supported her since May, 1907. She insisted on the witness stand that he deserted her when he went to his father's farm in Grand Junction. He called on her at the farm of her father frequently up to November, 1912, and a few times afterwards. It appears undisputed that his visits there were not welcomed by her family. It is claimed that on the visits he made after November, 1912, he proposed to his wife that she secure a divorce. The contributions made by the respondent during the period from May, 1907, to November, 1912, amounted in all to $39, and ceased at the time that the abandonment is charged in the information to have been first committed.

It is urged by respondent's counsel that the trial court should have directed a verdict for the respondent at the close of the people's case, because the proofs show that the desertion, if any, took place prior to September, 1907, and further because the act then in effect has since been repealed, and this prosecution was had under a statute which has gone into effect since that time; and also because the separation, if any, seems to have been mutual.

An examination of the testimony of the complaining witness is convincing that what occurred in April,

1907, could not be said to have been desertion and abandonment on the part of the respondent, because it is clear, from what took place, that it was not the intention of the respondent to permanently leave his home at that time.   The elements of this offense are fully discussed by this court in the case of *People* v. *Stickle,* 156 Mich. 557 (121 N. W. 497), in an opinion written by Mr. Justice OSTRANDER, and in an opinion written by Mr. Justice STONE in *People* v. *Albright,* 161 Mich. 400 (126 N. W. 432). We are of the opinion that the learned trial judge very properly instructed the jury that under the information filed in this case it must appear that the abandonment and failure to support occurred on and after September 12, 1907. Neither are we of the opinion that it could be said that as long as the respondent was making contribution to the support of his wife and child he could be held to be guilty of having abandoned them. The definition of abandonment, which is approved in the case of *People* v. *Stickle, supra,* makes it an essential element of the crime that perpetual separation must be intended; and from the evidence in this case, as long as he was making those contributions we do not think it can be said that he intended to abandon his wife and child. The last payment made by respondent to his wife was in November, 1912, and from that time up to October 3, 1914, he had contributed absolutely nothing to their support. We are of the opinion, however, that the jury were warranted in finding the respondent guilty of the offense charged in the information, from all the facts and circumstances in the case, upon his failure to support them after November 1, 1912, and that, although up to that time he may not have formed any intention to permanently separate himself from them. We are satisfied that there was enough evidence to warrant the jury in coming to the conclusion that he had formed such an intent since

that time and finding him guilty as charged in the information. The court did not err, therefore, in refusing to direct a verdict at the close of the people's case.

While the respondent was on the witness stand he was interrogated with reference to certain trouble that he had with his father concerning his wife, and was asked whether he did not strike his father as a result of this trouble and whether his father did not cause a warrant to issue for his arrest. It is contended that these questions tended to prejudice respondent and were not germane to the issue. We quite agree that it does not appear that the questions were material or related to the issue here involved, but we do not see how the answers could be said to have prejudiced respondent in the eyes of the jury, because it appears that whatever he did was in defense of his wife and not against her.

At the close of the people's case the following occurred:

"*Mr. Lewis:* We wish to offer from the files of case No. 5247 in this court the warrant, complaint, return, and recognizance to appear in the circuit court—that is, the files in the case preceding this that was dismissed last May. The purpose of it is merely to show that such proceeding was in process at that time, and we expect to show that the respondent at that time made the agreement to settle and adjust matters in consideration that the case should be dismissed on that understanding; that he failed to make the settlement as he agreed, and after several notifications from the prosecutor's office he failed.

"*Mr. Cavanaugh:* Now—

"*The Court:* Just a moment, Mr. Cavanaugh. The fact that there was another case against him may appear, but the mere fact that there was an agreement for a settlement and it was not complied with is not of material force here because he is being now tried here on this offense, which is distinct and separate from the other. There might have been a desertion in the other

and not in this. I don't see—this being a criminal case, I think, gentlemen—that so far as to what was said in the disposition of that, in the absence of a conviction I think there may be some doubt whether you could show that. But the fact that proceedings had been taken, that fact may stand.

"*Mr. Cavanaugh:* I take an exception.

"*Mr. Lewis:* I am told that there was a written agreement or bond signed by the respondent, and that this agreement was signed and taken by him for the purpose of getting other signers upon it, sureties.

"*The Court:* It was not completed and was not signed wholly. But the point that the court makes is this: that in a criminal case you can't introduce circumstances which tend to convict of another violation in support of this if it was not a conviction. I think it may be stated as I have indicated, that due process has been made heretofore, and that it was not carried to fruition, and now these proceedings are taken to do so, but I don't think that you can take anything that the defendant did at that time as evidence of his guilt. He may have wanted to have settled that case and waive personal rights. I think for that purpose I will sustain the objection.

"*Mr. Lewis:* The complaint and warrant may be in as showing the date?

"*The Court:* Yes, sir."

It is urged that it was error to bring out the matter of the previous arrest and attempted settlement before the jury. It clearly appears that the trial judge did not allow this evidence to be introduced as proof in support of the conviction here obtained, but limited it to the complaint and warrant as fixing the date of this first arrest, inasmuch as there had been some testimony in the case by witnesses as to acts happening just before and just after the first arrest.

The trial judge charged the jury with reference to the offense as follows:

"But before the husband can be convicted of this offense you must be satisfied beyond reasonable doubt, that is, a moral certainty, that he not only refused to provide necessary and proper shelter, food, care, and

clothing for his wife and child, but that he wilfully and unlawfully deserted and abandoned them. This means more than going away; more than mere separation. It means in this case, that is, abandonment and desertion under this statute means, to be separate from wrongfully, without intention of again resuming the marital relation. The offense charged in the information consists of two elements: *first*, an act of desertion and abandonment; *second*, the following up of such an act of desertion and abandonment without providing the necessary and proper shelter and food. In this case, to convict, you must find an act of desertion and abandonment of the wife and child, plus a refusal or neglect to provide for them."

This was a correct statement of the law with reference to this offense, in accordance with the decision of this court in *People* v. *Albright, supra.*

Later in his charge, the court said:

"Before the husband can be convicted, you, as a jury, must find he intended to abandon her as his wife, the same as though, beyond a reasonable doubt, that this act of abandonment at the time charged here, if he abandoned her, was with the intent that it should be perpetual as above defined, that he intended never to support her, or live with her again, or furnish her with proper shelter, food, etc.; in other words, that he intended to abandon her as his wife, the same as though he had no wife."

Later he said:

"The burden is upon the people to satisfy you of these two propositions that I have just sought to acquaint you with; that is, the fact of desertion and the fact of abandonment. These two elements must appear to your satisfaction beyond a reasonable doubt."

Criticism is made that in this last statement the court failed to charge that respondent's failure to provide necessary and proper food, shelter, and clothing should be proved beyond a reasonable doubt. Undoubtedly the court inadvertently omitted this in this connection, but in view of the clear and concise state-

ment of the offense and its necessary elements made by the court in the other parts of the charge quoted from *supra*, we do not believe that the jury could have been misled by his failure to again enumerate them all in the paragraph of the charge which is criticised.

We have carefully examined the other assignments of error, but deeming them without merit, and being satisfied that the case was properly submitted to the jury, and that the respondent had a fair and impartial trial, we are of the opinion that the conviction should be affirmed. The trial court will proceed to judgment.

BROOKE, C. J., and STONE, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.

The late Justice MCALVAY took no part in this decision.