LACEY *v.* LACEY.

1. DIVORCE—CRIMINAL LAW—SEPARATE MAINTENANCE—HUSBAND AND WIFE.

Punitory proceedings for contempt of the court of chancery against a husband who neglects to pay alimony awarded by a decree of divorce are contingent upon his being found within the jurisdiction of the court. The effect of such decree is also to deprive the wife of her remedy by criminal proceedings under a charge of abandonment.

2. SAME—EQUITY—ABSOLUTE SEPARATION.

It was erroneous for the court to grant a divorce to complainant who filed a bill to obtain support and maintenance pursuant to Act No. 243, Pub. Acts 1889, 3 Comp. Laws, §§ 8686, 8687, and who did not desire an absolute divorce; where the defendant husband filed a cross-bill and the court in reviewing the evidence held that his charges had not been sustained by the evidence, finding, also, that the complainant's bill was sustained by the proofs, which showed, among other things, that the husband had frequently desired her to secure a divorce, and she had declined.

3. SAME—STATUTES—ALIMONY.

Where the wife expressed her willingness to renew marriage relations and was ready to do so for the sake of their infant, it was not in the interest of the public that an absolute divorce should be granted against her consent.

Appeal from Muskegon; Sullivan, J. Submitted October 14, 1915. (Docket No. 90.) Decided December 21, 1915.

Bill by Myrtle A. Lacey against Roy E. Lacey for separate maintenance. From a decree of absolute divorce, complainant appeals. Modified.

*Cross, Vanderwerp, Foote & Ross,* for complainant.
*Simpson & Anderson,* for defendant.

STEERE, J. Petitioner was decreed an absolute divorce from defendant by the Muskegon county circuit court in chancery on the ground that the material facts charged in her "petition are true, and that the defendant has been guilty of the several acts of extreme cruelty therein charged," and for the further reason it appeared to the court "that it is for the best interest of said parties that an absolute decree of divorce be granted to said petitioner from said defendant." This she neither asked nor desired, and has appealed from said decree, claiming it was in that particular neither

within the power of the court nor proper under the proofs, nor for the best interests of said parties, that the same be granted. Her application to the court for relief was in the form of a petition filed in compliance with and under the provisions of Act No. 243, Pub. Acts 1889 (3 Comp. Laws, §§ 8686, 8687 [4 How. Stat. (2d Ed.) §§ 11534, 11535]), entitled:

"An act to provide wives with property and maintenance from their husband's estates when neglected or deserted by them, or when the husband has become an habitual drunkard or has practiced extreme cruelty towards his wife or committed any offense sufficient to entitle the wife to a decree of divorce or separation."

In this petition she neither prayed for a divorce or separation. Her prayer was for financial aid and maintenance. Under the provisions of said act it was necessary for her to set out in her petition extreme cruelty or such other offense as would entitle her to a decree of divorce or separation, had she asked it, and she alleged extreme cruelty, neglect, abandonment, and nonsupport. Defendant filed an answer and cross-bill praying that he be decreed a divorce from petitioner on the ground of extreme cruelty, to which she filed replication and answer in denial. Proofs were taken in open court, and at conclusion of the testimony the court announced an opinion that the charges made by petitioner were fully sustained, while those made by defendant in his cross-bill were wholly unsupported in all material features, severely censuring and condemning defendant's treatment of his wife, stating that neither the court nor the law had "much use for him," and expressed the view that, as "no woman can live with him long because he is too selfish to live with a woman," a divorce should be granted in the interest of all parties, "not for his sake, but for public policy's sake, so that he won't pretend that he can go with young girls and not have any right to do

it." A decree of absolute divorce was thereafter filed and entered in favor of petitioner, awarding her as alimony $600 payable in installments of 16 and a fraction dollars per month, and for the support of their infant son 19 months old, of whom she was granted custody, $12.50 per month until he arrived at the age of 14 years.

The parties were married at Muskegon, in April, 1911, where defendant was employed, but shortly after their marriage they moved to Albion, Mich., where he engaged in the moving picture business for a time and later was employed by a concern in the moving picture business located at Gary, where petitioner joined him, and they resided together for some months, when, as the time of her confinement approached, he took her to her mother's home in Gas City, Ind., and left her, since which time he has neglected and deserted petitioner, refusing to accept her as his wife or live with her. Defendant is an expert machinist, and eventually returned to his former employment in Muskegon, where he was employed at a salary of $130 per month, when petitioner finally sought to join him, in March, 1913, and until the hearing of this case. He did not go to Gas City at the time or after the child was born nor send for his wife, and when she went with their infant to him at Muskegon he refused to receive them, telling her to take her baby and go back to her mother, declining to live with her or properly provide for her and her child, or do anything for her unless she would get a divorce. This she declined to do and endeavored unsuccessfully to prevail on him to receive her. He left Muskegon for Detroit, but returned to his former employment soon after. She remained in Muskegon, obtaining such employment as she could, but experiencing great difficulty in doing so, owing to the fact that she had her baby to care for. She finally reached a point of destitution where she was obliged to accept

assistance from certain charitably inclined women who discovered her distress. Further details of their domestic difficulties, which culminated in this proceeding, may be passed with the reflection that we find no occasion to disagree with the trial court's conclusions as to defendant's conduct and delinquencies.

He is shown to be without property, real or personal, and execution proof. He desired a divorce from petitioner, whether because of new found preferences, as intimated, or for other reasons, is immaterial. He had urged her to get a divorce, which she declined to do, and he tried unsuccessfully to secure one by cross-bill in this proceeding. By decreeing a divorce to her the court severed the marriage relations as to both and furnished defendant in that particular just what he wanted.

By the decree he is given immunity from pressure by criminal proceedings for deserting and abandoning his wife and child. *People* v. *Dunston,* 173 Mich. 368 (138 N. W. 1047, 42 L. R. A. [N. S.] 1065). Punitory proceedings for contempt of the chancery court in disobeying its order requiring him to pay petitioner alimony are contingent upon his being found within the jurisdiction of the court. It is stated in the brief of counsel for petitioner that he has not complied with the court's order and has left this State. No counsel appeared for him in this court and no brief was filed in his behalf.

The power conferred upon the court by the act under which this petition is filed is as follows:

"The circuit court in chancery of any county in this State in which said husband or wife shall reside, shall, on the application of the wife by petition, allot, assign, set apart and decree to her as alimony the use of such part of her husband's real and personal estate, or such proportion of his earnings, income or revenue as the court may determine, in its discretion, and during the pendency of the proceeding may require the husband

to pay such sums to carry on the proceeding, or for her support, as it shall deem necessary, in like manner as * * * in case of suit for divorce."

This petition is confined strictly to the provisions of said act, the first and second paragraphs of the prayer for relief are in the exact language of the act, and the fourth paragraph makes reference in general terms to the statute. The only suggestion in the pleadings that a divorce or separation was desired appeared in defendant's cross-bill, which the court dismissed with emphasis.

While, in suits for divorce either limited or absolute, the court to which application may be made is held vested with discretionary authority to grant an absolute divorce against the desires of the complaining spouse found to be in the right (although only a limited divorce with separate maintenance has been requested) we do not find that under this statute, where no separation of any kind is asked or desired by petitioner, a decree forcing an absolute divorce upon an innocent wife has been sustained.

The recognized reason moving courts to decree absolute divorce against the desires of the innocent party, in cases where the testimony is such as in the opinion of the court shows reconciliation impossible or improbable, is said to be "on the ground of public policy to prevent the mischiefs arising from turning out into the world in enforced celibacy persons who are neither married nor unmarried." By that test, if recognizable in any case under the statute, it is questionable whether public policy demands that this delinquent defendant be turned out into the world, according to his desires, against petitioner's protest, freed from the restraints of his marital relations with her and at legal liberty to repeat the conduct which the court now condemns, with some other woman.

The evidence shows that petitioner refused defend-

ant's request to institute divorce proceedings against him to nullify their marriage. She testified that she was ready, willing, and desired to live with him again; was, after all which had occurred, attached to him and objected to a divorce, not only on her account, but particularly that of her infant son, saying of defendant:

"I would be glad to make a home for him for the sake. of the baby, because I think the baby boy should have his father's companionship."

We think public policy does not demand that this woman should be deprived against her protest of her wifely rights, but should be left to seek such redress as the courts of law, civil or criminal, may in the future afford. As is well said in *Coon* v. *Coon*, 163 Mich. 644 (129 N. W. 12):

"Certainly it is not for the interest of the State that the guilty husband, who has violated his marriage covenant, should obtain by indirection a divorce from his innocent wife, who is willing to condone his offense and renew marital relations."

The decree must be modified and limited to come within the scope of the petition in this case and the statute under which it is filed, omitting absolute divorce and limiting its provisions to maintenance of the neglected and deserted wife and child, with her monthly allowance continuing until the further order of the trial court, with costs to petitioner.

BROOKE, C. J., and PERSON, KUHN, STONE, OS-TRANDER, BIRD, and MOORE, JJ., concurred.