27216. McCOMAS *v.* GLENDINNING *et al.*

DECIDED NOVEMBER 16, 1938. REHEARING DENIED DECEMBER 17, 1938.

*Hitch, Denmark & Lovell, R. Basil Morris,* for plaintiff in error. *Conneral & Hunter,* contra.

FELTON, J. Robert Glendinning Jr., filed a petition in the superior court, in which his wife joined, to adopt the ten-year-old son of his wife and her former husband, L. Q. McComas. The petition did not allege that McComas had consented to the adoption, but attempted to avoid this necessity by alleging an exception to the rule of consent. It alleged that McComas had abandoned his son by reason of the circumstances recited, to wit: that McComas filed suit for divorce against his wife in Nevada in 1931; that Mrs. McComas filed a cross-petition and that a decree was entered in the case which recited that Mrs. McComas was entitled to a divorce on the ground of non-support, awarding a total divorce to both parties and the care, custody, and control of their 47-month-old son to Mrs. McComas subject to the right and privilege of McComas to visit the child at all reasonable times and at such places as would be convenient to both parties, and ordering McComas to pay $40 per month for the support, maintenance, and education of the child; that Glendinning married Mrs. McComas on February 20,

1934, and that since that time McComas has refused to continue the monthly payments for the support of the child and has failed to contribute any sum whatsoever to his support and education and to provide necessaries; that McComas, who is an officer in the United States Army, stationed in Hawaii, has made no effort to visit the child or avail himself of the privileges of visiting him; that since the marriage of Glendinning to Mrs. McComas, Glendinning has supported the child. Defendant McComas filed a demurrer on the ground, among others, that the petition did not allege facts constituting an abandonment or the consent of the defendant, and that it therefore did not state a case in which an order declaring the adoption sought would be authorized. The demurrers were overruled and the defendant excepted.

The Code, § 74-402, declares: "The petition for adoption, duly verified in duplicate, shall be filed jointly by husband and wife, unless the person desiring to adopt the child shall be unmarried, in the superior court of the county in which said child may be domiciled, setting forth the name and age of the child; the address and age of the petitioner; the name by which the child is to be known; whether the parents are living or not; names and addresses of the living parents or guardians, if known to petitioner, or the name of the mother when the father has abandoned his family; a description of the property belonging to said child; and the consent of such father or mother to the act of adoption; if the child shall have neither father nor mother, the consent of no person shall be necessary to said adoption." This section, under a reasonable and common sense construction, means that the consent of both parents of a child is necessary in all cases except in cases where the father has abandoned his family. The petitioner contends that after the divorce the child was the family. Decision of that question is not necessary under the view we have of the case. We shall assume for the sake of argument that such is the case. The only question to be decided then is, do the facts alleged constitute an abandonment of the child? The answer to this question depends upon the definition of "abandonment." "Abandon" is defined in Webster's New International Dictionary (2 ed.) as meaning "to relinquish or give up with the intent of never again resuming or claiming one's rights or interests in; to give up absolutely; to desert, as a person to whom one owes a duty, allegiance, or the like." Other

definitions of the word "abandon" are, "to forsake or renounce utterly; give up wholly; desert." Funk & Wagnalls New Standard Dictionary of the English Language. "To relinquish; forsake; give up. The word includes the intention." Bouvier's Law Dictionary, 3rd Revision. "Abandonment" means an absolute relinquishment; a total desertion. 1 C. J. 5. Intention is the first and paramount object of inquiry. 1 C. J. 7. 1 Abbott's Dictionary of Terms and Phrases defines abandonment as the relinquishment, surrender, or disclaimer of one's rights, and says: "But the surrender of a relation, involving as it does the disclaimer of duties more prominently than that of rights, is better styled desertion," and defines "desertion" as "the abandonment of a relation or service in which one owes duties; the quitting, wilfully and without right, one's duties; the withdrawal, unexcused, from the obligations of some condition or status."

Code, § 74-9902, making the abandonment of a child a misdemeanor, provides: "If any father shall wilfully and voluntarily abandon his child, leaving it in a dependent condition, he shall be guilty of a misdemeanor. . . A child thus abandoned by the father shall be considered to be in a dependent condition when the father does not furnish sufficient food and clothing for the needs of the child." The only sources of information upon the question in this State are the decisions of our courts defining the term as used in Code, § 74-9902. These definitions by the courts of this State, as well as the general definitions given above, include the idea that the father must desert the child, or, in other words, sever the parental relation and throw off all parental obligations. *Gay* v. *State,* 105 *Ga.* 599 (31 S. E. 569, 70 Am. St. R. 68) ; *Jemmerson* v. *State,* 80 *Ga.* 111 (5 S. E. 131). As was said in Truelove v. Parker, 191 N. C. 430 (132 S. E. 295), merely permitting the child to remain for a time undisturbed in the care of another is not such an abandonment as would deprive the parent of the right to prevent the adoption of such child, since in such case abandonment must be wilful; that is, accomplished purposely and deliberately in violation of law. Refusal to provide a child with the necessities of life is only one element in the act of abandoning a child. In this case it appears from the petition that the father did not desert his son, but that the care, custody, and control of the son were taken from him by a decree of court. Under the

Georgia law such a decree would preclude a prosecution for abandonment in the absence of an actual abandonment, and the mother and son would be relegated to their remedies under the decree for the reason that there is no voluntary action when the law takes jurisdiction and fixes the status of the parties. The case of People v. Dunston, 173 Mich. 368 (138 N. W. 1047 42 L. R. A. (N. S.) 1065), is nearly on all fours with the facts in the case at bar. In that case the Supreme Court of Michigan said: "Respondent had already been separated from his wife and children by a decree of a court. He was a thing apart from them. He had no right to, and could not if he wished, resume family or marital relations with them. There only existed the obligation to contribute to the wife for the support of the children. . . Whatever his culpability and legal liability under other laws may be, we are constrained to hold that the facts . . in this case do not constitute the offense charged under the statute in question." The offense charged in the Dunston case was that of abandonment of his children under the age of fifteen years, which offense was a felony under the laws of Michigan.

The petitioner contends that the failure to pay the alimony provided by the decree of the Nevada court for the support of the child constitutes abandonment. He bases his contention on the provisions of Code, § 74-108, which provides in part that a father, who has the right to the control, services, and proceeds of the labor of the child, shall lose this parental power by his failure to provide necessaries for his child, the contention being that conduct by which parental power is lost amounts to abandonment. The fallacy in this argument is that McComas had already lost his parental rights by virtue of the decree of divorce, and what one does not have he can not lose. Furthermore the Code provision and particular division referred to provides for temporary and not permanent loss of the parental power. *Wigley* v. *Mobley,* 101 *Ga.* 124 (28 S. E. 640). However, we do not think that loss of parental power by reason of mere failure to provide necessaries for the child constitutes an abandonment under the facts of this case. If his child was his family he has not deserted it by any voluntary action evidencing his intention to relinquish forever his parental rights, even by refusing to contribute to the support of the child. Further, mere failure to visit the child after the divorce decree could

not convert the legal declaration of the status of the parties into an original, voluntary abandonment under the circumstances of this case. The legislature in this State has not enacted a law providing under what circumstances a divorced parent's consent might be dispensed with in an adoption case brought by or joined in by the other spouse. In the absence of consent it would seem that in cases of divorce the question of the custody of children is one exclusively for the judge of the superior court in a proceeding for the determination of the question where there has been no actual voluntary abandonment. In the case at bar the child was very young when he was awarded to his mother, and it was the natural and human thing to award him to her. As the child grows older the father has the right to make application for a change in the provision for his seeing or visiting his son. He might ask that the child spend a great deal of time with him, or might have the right and pleasure of having the child live with him part of the time. These matters remain open and subject to review according to circumstances. If the adoption is granted in this case McComas loses all his paternal rights. He can no longer as a matter of right visit his boy. He would have to make a will in order to have his son share in his estate. This adoption would abrogate the divorce decree and put an end to the father's rights under it without a hearing on the questions involved. This father does not forfeit his rights by not using them, and they remain open to him as long as they are consistent with the welfare of the child.

So we conclude that, in the absence of an abandonment by the father, his consent is necessary before another may legally adopt his child. The petition in this case not alleging consent of the father, and not alleging facts amounting to an abandonment, did not set forth a cause of action and the court erred in overruling the general demurrer. It is not necessary to pass upon the rulings on the special demurrers.

*Judgment reversed. Stephens, P. J., concurs. Sutton, J., dissents.*