37579. LIBERTY MUTUAL INSURANCE COMPANY *et al.* *v.* ELLIS.

DECIDED MAY 5, 1959.

*Wright, Rogers, Magruder & Hoyt, Wade C. Hoyt, Jr.*, for plaintiffs in error.

*Maddox & Maddox, James Maddox*, contra.

QUILLIAN, Judge. ■ This is a workmen's compensation case. There were only two issues passed upon by the Workmen's Compensation Board. They are succinctly stated: (1) Is the claimant the legal widow of the deceased? (2) Did she voluntarily abandon the deceased prior to his death?

The employer contends that, upon proof that the claimant, prior to her marriage in July 1955, to the deceased, entered into a purported ceremonial marriage with one Louis Howard Daniel, who at the time had a living wife, the presumption arose that Daniel was divorced from his former wife.

Code § 53-102, as amended in 1957 (Ga. L. 1957, p. 83), provides: "Previous marriage undissolved. The dissolution of a previous marriage in divorce proceedings must be affirmatively established and will not be presumed." The language of the quoted Code section is explicit that where there is proof that one of the parties to a ceremonial marriage has a living spouse, there is no presumption that a divorce has been previously granted dissolving the former marriage. The employer's contention is not meritorious.

The evidence adduced on the hearing of the case authorized the finding of the Workmen's Compensation Board that on September 28, 1948, the claimant went through the form of a ceremonial marriage with Louis Howard Daniel who at the time had a living wife of the name of Loretta Taylor from whom he was not then nor thereafter divorced. The evidence further showed that Loretta Taylor was still in life in the year 1948 and presumptively continued in life for seven years (Code § 38-118), and that the claimant and Daniel did not live together after the year 1951. So it is apparent that Loretta was in life at the

time the claimant and Daniel lived together; and, so far as the record discloses, Daniel was never divorced from Loretta. These facts concerning the existence of Loretta, wife of Louis Daniel, appear to be proved by evidence not contradicted in any material particular. The rule by which it was controlled, under the proven facts of the case, is simple and ancient. One cannot legally enter into a ceremonial or common-law marriage with a person who has a living, lawful spouse.

■ Code § 114-414 provides: "The following persons shall be conclusively presumed to be the next of kin wholly dependent for support upon the deceased employee: (a) A wife upon a husband whom she had not voluntarily deserted or abandoned at time of the accident." The desertion or abandonment contemplated by the Code section is that defined by the decision of this court and lexicographers, and must, in order to defeat a claim for compensation filed by the wife of a deceased employee, be total and permanent. In *McComas* v. *Glendinning*, 59 *Ga. App.* 234, 235 (200 S. E. 304) it is said: " 'Abandon' is defined in Webster's New International Dictionary (2d ed.) as meaning 'to relinquish or give up with the intent of never again resuming or claiming one's rights or interest in; to give up absolutely; to desert, as a person to whom one owes a duty, allegiance, or the like.' Other definitions of the word 'abandon' are, 'to forsake or renounce utterly; give up wholly; desert.' Funk & Wagnalls New Standard Dictionary of the English Language. 'To relinquish; forsake; give up. The word includes the intention.' Bouvier's Law Dictionary, 3rd Revision. 'Abandonment' means an absolute relinquishment; a total desertion. 1 C.J.5. Intention is the first and paramount object of inquiry. 1 C.J.7."

The evidence showed that the claimant left the abode of the deceased, but continued to cohabit with him elsewhere. There was proof that the claimant did not intend that even the partial separation from the deceased be permanent. In the very last sentence of her testimony she related that she and the deceased planned moving back together in a house to themselves. Added to this evidence was the testimony of the claimant's mother that the claimant was planning to return to the deceased "but not right then." The claimant testified that she cohabited with the

deceased as though nothing had happened, and she and the deceased continued to spend week ends and nights together up until the time he died on August 9, 1957.

We think that there was not only sufficient competent evidence in the record to support the award of compensation, but that the award was demanded by the evidence.

*Judgment affirmed. Felton, C. J., and Nichols, J., concur.*