### 39615. SALE v. LEACHMAN.

DECIDED OCTOBER 1, 1962—
REHEARING DENIED NOVEMBER 9, 1962.

*Lokey & Bowden, Henry L. Bowden,* for plaintiff in error.
*Smith, Field, Ringel, Martin & Carr, Sam F. Lowe, Jr., Emory S. Mabry, III,* contra.

BELL, Judge. ■ The first question raised by this appeal is whether the evidence sustains a finding that the failure of the father for over twelve months to comply with the order of the superior court to make support payments for his children was wilful and wanton under Ga. L. 1941, p. 301, as amended; Ga. L. 1950, pp. 289, 290, as amended; Ga. L. 1960, pp. 791, 792 (*Code Ann.* § 74-403 (2)). In *Carpenter v. Forshee,* 103 Ga. App. 758 (3), 773 (120 SE2d 786), this court held that wantonly and wilfully failing to comply with a court order to make support payment means without reasonable excuse, with a conscious disregard of duty willingly, voluntarily and intentionally.

It is urged that the lower court erroneously found wilfulness and wantonness, which it is contended cannot exist coincidentally with the facts shown by the record regarding the father as to: financial inability to pay; diligent and persistent efforts to find employment; regular visits to the children and visits by the children with him; continuing expression of concern and regret at inability to pay; the finding by the court that the father loved his children and did not want to break the parental tie; and that there was no malice nor any conscious desire on the part of the father to sever the parental tie.

In the evidence it was uncontradicted that the father made no payments from the time the court order became effective, June 16, 1960, to February 1962; that from December 1959, until November 1960, he was employed with a real estate firm on a commission basis and earned a total of between $300 and $500 during that time; that in spite of these meager earnings he made no effort during this period to find extra work to earn money with which to live and support the children; that he signed the support agreement to pay $120 per month at a time when he knew that he had earned less than $50 per month for many months preceding this agreement; that as of November 1960, he had gone into debt so much he had to try to find another job to pay his debts; and he had borrowed $500 from his mother; that he did not use any of this money for support payments for the children; but that he paid a judgment of $90 in 1961 obtained by Gulf Oil Company; in June 1961, he obtained employment with a life insurance company at $300 per month, which was increased to $325 per month in January 1962; and his mother gave him a roof over his head, that he ate at home and she bought the meals; and the first time he made any payment for the support of the children under the decree of June 16, 1960, was on or about February 5, 1962.

Although the father testified he had visited 90% of the employment agencies, he was only able to name three where he made an application.

The record revealed that even when the father obtained money and was being supported by his mother, he paid other debts in preference to what should have been his supreme obligation—

the support of his children. From the above evidence it is indisputable that the father though earning rather diminutive income commissions in his job as a real estate agent on a commission basis did not seek from December 1959, to November 1960, other employment to supplement his earnings; that later he was unemployed for a period of time but obtained some money from his mother; and that for the last seven months of the period of default involved, though earning $300 per month and finally $325 per month, he paid nothing for the support of the children. This evidence constitutes some indication of a wanton and wilful failure by the father to comply for a period of twelve months or longer with the superior court order to support his children.

Under these circumstances, the trial judge did not err in finding the father's failure to support his children was wilful and wanton within the meaning of Ga. L. 1941, p. 301, as amended; Ga. L. 1950, pp. 289, 290, as amended; Ga. L. 1960, pp. 791, 792 (*Code Ann.* § 74-403 (2)).

■ The second question raised upon this appeal involves the interpretation of the statute, supra, and is this:

Does the wanton and wilful failure for one period of twelve months to comply with the order of a superior court requiring the father to support minor children forever eliminate the necessity for obtaining the consent of the father for the adoption of his children, even though after the default continuing for this period the father begins support payments near the time of the filing of the petition for adoption?

The father's counsel urges that the intent of the statute does not justify an affirmative answer to this question. However, the clear and unambiguous provisions of the statute require an affirmative answer to the query, for the statute does not specify any particular period of twelve months or longer necessary to work the forfeiture. The statute provides most simply that where the father has wantonly and wilfully failed to comply with the court order to support the children for a period of twelve months or longer, his consent shall not be required for their adoption, and the consent of the mother alone is sufficient. If the General Assembly had intended to require that the default

be for the period immediately preceding the filing of the adoption petition, or for that matter prior to some other step in the course of the action, it would have added words appropriate enough to compel this additional requirement. Here there are no qualifications whatsoever in the statute as to when the period of time shall begin or end. Where the language of the statute is plain and unambiguous, there is no occasion to resort to rules of construction. *Cartersville Candlewick, Inc. v. Huiet*, 204 Ga. 609, 615 (50 SE2d 647). "As has been frequently announced, courts have nothing to do with the wisdom, policy, and expediency of the law." *Atkins v. State*, 154 Ga. 540, 542 (114 SE 878).

We find that, under the adoption statute, the wanton and wilful failure for any period of twelve months or longer to comply with an order of the superior court ordering the father to support his children eliminates the necessity for obtaining the consent of the father for the adoption of the children.

The trial court properly dismissed the objection of the father to the petition for adoption.

*Judgment affirmed. Carlisle, P. J., Frankum, Jordan, Hall, Eberhardt and Russell, JJ., concur. Felton, C. J., and Nichols, P. J., dissent.*

FELTON, Chief Judge, dissenting in part. I express no opinion as to Division 1 of the majority opinion since under my construction of the adoption statute, hereinafter set forth, it is not necessary to reach the question of whether the father's failure to comply with the court order to make payments for the support of his children was wanton or wilful.

"In construing a statute, the spirit of the enactment should be considered and construction should be made in accordance therewith; and the courts are not controlled by the literal meaning of the language of the statute. The spirit or the intention of the law prevails over the letter. 82 CJS 613, 615, Statutes, § 325. Constructions resulting in unreasonableness and absurd consequences should be avoided. 82 CJS 623, 627, Statutes, § 326. The legislative intent prevails over literal import of words. The general scheme and purpose of legislation is the criterion for the proper construction thereof. *Carroll v. Ragsdale*, 192 Ga. 118 (15 SE2d 210); *Gazan v. Heery*, 183 Ga. 30 (187 SE 371,

106 ALR 498); *Williams v. Bear's Den, Inc.*, 214 Ga. 240 (104 SE2d 230); *Ragland v. Justices of Inferior Court*, 10 Ga. 65; *Singer Mfg. Co. v. Wright*, 97 Ga. 114, 121 (25 SE 249, 35 LRA 497); *Russell v. Arnold*, 25 Ga. 625. In Plowden's Commentary, quoted in *Gazan v. Heery*, supra, at p. 41, it is stated: 'It is not the words of the law, but the internal sense of it, that makes the law; and our law consists of two parts, viz., of body and soul; the letter of the law is the body of the law, and the sense and reason of the law are the soul of the law . . . and the law may be resembled to a nut, which has a shell and a kernel within; the letter of the law represents the shell, and the sense of it the kernel; and as you will be no better for the nut if you make use only of the shell, so you will receive no benefit from the law if you rely upon the letter; and as the fruit and profit of the nut lie in the kernel and not in the shell, so the fruit and profit of the law consist in the sense more than in the letter. And it often happens that when you know the letter, you know not the sense, for sometimes the sense is more confined than the letter, and sometimes it is more large and extensive.' " *Drake v. Thyer Mfg. Corp.*, 105 Ga. App. 20, 22 (3) (123 SE2d 457).

The legislative intent as to the adoption statute in general can be gleaned from some of the cases interpreting it. "While it may be true that in some respects the statute as to adoption may be liberally construed, yet, as applied to severance forever of the paternal relation, it must be construed strictly against the applicant and favorably to the parent. See Code of 1863, § 1739; *Gay v. State*, 105 Ga. 599 (31 SE 569, 70 ASR 68). Under the statutes providing that abandonment may render such consent unnecessary, it is generally held that the abandonment must be such as to show a settled purpose to forego all parental duties and claims." *Glendinning v. McComas*, 188 Ga. 345, 347 (3 SE2d 562), affirming the Court of Appeals on certiorari, *McComas v. Glendinning*, 59 Ga. App. 234 (200 SE 304); *Allen v. Morgan*, 75 Ga. App. 738, 748 (44 SE2d 500).

To hold, as does the majority, that the non-payment of the child support for *any* "12 months or longer" period eliminates the necessity for obtaining the father's consent to the adoption, runs counter to the legislative intent of hesitancy to sever the

paternal relation forever. Another, and perhaps more cogent argument against this construction, is the practical difficulty of deciding in cases such as this one, in which payments were not made for 12 months or longer and then were commenced prior to the filing of the petition for adoption, how far back in point of time the "12 months or longer" period could have occurred and still operate to eliminate the necessity of the father's consent. A more reasonable construction, in my opinion, would require the "12 months or longer" period to be next preceding and existing at the time of the filing of the petition for adoption. No other construction could explain the use of the words "or longer" as the words "12 months" would be sufficient if the intention were otherwise. It is not alone what is being done under a statute which conclusively determines its intent. What *may* be done may as well determine intent. Under the ruling of the majority, a man could wilfully refuse to pay court-ordered child support payments for 12 months immediately after the signing of the judgment for child support and for some reason, maybe a change of heart, begin making payments and continue for 10 years and up to the time of a petition for adoption, and be deprived of his right to oppose the adoption without his consent. If this can be done under the law in question, and it can under the majority ruling, I do not see how any reasonable mind can conclude that the majority's construction of the law is sensible, right or conscionable. Where the father has commenced making payments prior to the filing of the petition, as in the instant case, the question of his abandonment or lack of it should be a matter of fact in which the question of lack of support payments would play no part.

I would reverse the judgment of the trial court in dismissing the father's objection to the adoption proceedings.

Nichols, P. J, concurs in the dissent.

## CORRECTIONS.

Page 253, line 15 from top.  Change "3 Encyclopedia of Ga. Law" to "2 Encyclopedia of Ga. Law."

Page 645, line 10 from top.  Change "Lipshutz, Macey, Zussman & Sikes, John M. Sikes, Jr." to "Lipshutz, Macey, Zusmann & Sikes, John M. Sikes, Jr."