STOUTEN *v.* STOUTEN.

DIVORCE—WHERE SEPARATE MAINTENANCE PETITIONED FOR COURT MAY NOT DECREE ABSOLUTE DIVORCE.

Where a wife petitioned for separate maintenance under Act No. 243, Pub. Acts 1889 (3 Comp. Laws 1915, § 11479), and the husband answered in denial and prayed that her bill be dismissed, but neither asked for a decree of divorce, the pleadings were insufficient to confer jurisdiction upon the court to grant an absolute divorce, however convincing the proofs might be that plaintiff was entitled to it had she asked for it.[1]

Appeal from Kent; Dunham (Major L.), J.   Submitted October 20, 1925.   (Docket No. 100.)   Decided July 1, 1926.

---

[1]Divorce, 19 C. J. § 405.

Petition by Maggie Stouten against John Stouten for separate maintenance. From a decree of absolute divorce, plaintiff appeals. Reversed, and decree granted as prayed.

*Jewell, Face & Messinger,* for plaintiff.

STEERE, J. The parties to this suit were married October 23, 1903. On August 30, 1924, plaintiff filed this petition for separate maintenance under the provisions of Act No. 243, Pub. Acts 1889 (3 Comp. Laws 1915, § 11479), alleging offenses committed by defendant sufficient to entitle her to a divorce or separation. Defendant answered in denial of her right to the relief she asked, admitting allegations in her bill that he left their home about February 7, 1924, and had not returned, was an able-bodied man earning about $140 per month and capable of supporting himself and wife, alleged that he had liberally provided for her support according to his means, and in justification of his leaving their home detailed conduct on her part which he alleged made his remaining there intolerable and brought about the conditions she complained of; also charging her with extreme and repeated cruelty towards him in their domestic relations, and concluding with a prayer that the relief she asked be denied and her petition, or bill of complaint, dismissed. Her petition was filed with express reference to the statute and her prayer in it was for a decree awarding her a fixed sum for her support, payable weekly. Neither party asked for a divorce. That word is not found in the pleadings.

At conclusion of the testimony the court announced to counsel no argument was required, as:

"Your argument would not convince me that these people can live together. I am going to grant an absolute divorce. I am not going to turn a husband into the world without a wife and a wife into the

world without a husband.    It is against the policy of our law."

Plaintiff's counsel protested and started to refer to the statute under which her petition was filed, but court continued with his oral opinion reviewing the case and holding defendant guilty of offenses entitling plaintiff to an absolute divorce, with certain provisions as to alimony, expenses, and costs, to be in full satisfaction of all claims she might have against defendant's property, present or future.    A decree as announced was signed and filed and plaintiff has appealed.

When the case was heard, in 1925, plaintiff was 56 years of age and defendant 57.    They had lived together as husband and wife from the time of their marriage in 1903, until he left their home in February, 1924.    That marriage was the second for both, the first mate of each having previously died.    When they were married he had 5 children by his former wife, ranging in ages from 2 to 11 years, and she had 3 children by her former husband.    Each knew the situation of the other.    They began their domestic life with 6 children, 5 of his and 1 of hers, a boy 11 years of age who was epileptic and later died.    It was agreed that her two younger children should be taken by their grandmother.    Two children were born of their marriage, one of whom lived, a girl named Hermine who at the time of the hearing was over 20 years of age and married, and who testified at the hearing as a witness in behalf of her mother. The 6 children raised in that family were all grown and gone for themselves at the time of the hearing. Two of his 5 children were out of the State and the other 3 were witnesses in behalf of their stepmother. His oldest daughter, Mrs. Madden, who was 11 years of age when her father married plaintiff, and for 16 years lived or spent the week-end at their home, testi-

fied that plaintiff had always been to them "as a mother, provided a good home.    We could not ask for any better."

"Q. How did she treat your father, Mr. Stouten, during that time?

"A. I can't say she treated him any different than if she had been our mother; she was always good to him."

His daughter Mrs. Hudson, who was 8 years old when the parties were married, said:

"Since Mrs. Stouten married my father, she has certainly reared that family, came into the home and took care of us children.    She did everything that a mother could for us; we had no complaint whatever. I stayed in the home until I was 19 years old; then I was married."

A former partner of defendant named Antonides, testified that he had often been in the home of that family, and said:

"The attitude of Mrs. Stouten towards these several children was fine.    Their own mother would not have done any better than what she did.    Mr. Stouten had more of a way of being cranky towards the children, hard to please."

Even defendant himself, who had numerous "kicks" to advance against his wife's attitude towards him, when pressed with the question, "She raised your family and did well?" finally said "She certainly did. I have no kick coming on that at all."

These parties were in very limited circumstances when married, their largest asset or liability, as the case may be, consisting of 8 children between the ages of 2 and 11 years.    They, however, began their married life by purchasing a humble home on Carrier street in Grand Rapids under contract, at an agreed price of $900, upon which plaintiff was able to pay down $300, defendant at that time being unable to pay anything.    They later sold this for $1,400 and bought

a home on Lafayette street for $2,800, on which there was a mortgage of $800. They converted this into an interest in a farm upon which they lived for several years. During two years of that time he had a position as deputy sheriff of Kent county and was away from the farm most of his time. In his absence plaintiff, with the help of their children, ran the farm, and, as she states, they lived off from it, receiving very little from him during that period. They subsequently converted their equity in the farm into a home in Grand Rapids, which was held in their names by entirety and had not been fully paid for at the time of this separation. He is not shown to have had any special calling, was engaged in various pursuits and at times earned good wages. At the time of the trial he was working for the Grand Rapids Street Railway, earning $140 a month. They apparently lived their home life in reasonable harmony, with her in charge of the home and caring for it satisfactorily, until not long before the time of his leaving, when there arose a rift in their relations owing to his association with a certain woman, unknown to the family, which led to some friction and her insisting that he cease his relations with the woman. The details of that need not be gone into. It is sufficient to state the evidence is persuasive that plaintiff had good grounds for her insistence. He left home after a somewhat strenuous interview with plaintiff and his own daughter, Hermine, in which they made plain to him, as they testify, that they knew the facts in regard to his irregularities and insisted he must entirely drop his relations with the apex of this domestic triangle. He makes denial of any improprieties, but admits that he had become acquainted with the woman in question and taken her to the theater, on automobile rides, etc. His efforts at showing a platonic friendship were far from convincing. Touching his efforts

in that line he repudiated, when asked, any suggestion of marrying the woman if free to do so, said he did "not care anything for her," and declared, "I wouldn't marry the best woman that ever breathed."

The pleadings in this case are not such as to empower the court to grant an absolute divorce, however convincing the proofs might be that plaintiff was entitled to it.    She does not want one and he has not asked for one.    Her petition was filed under and with special reference to the act providing for a wife's maintenance in certain cases, and her proofs were directed entirely to establishing a right under the requirements of said act, the title of which is as follows:

"An act to provide wives with property and maintenance from their husband's estates when neglected or deserted by them, or when the husband has become an habitual drunkard or has practiced extreme cruelty towards his wife or committed any offense sufficient to entitle the wife to a decree of divorce or separation." 3 Comp. Laws 1915, § 11479.

This court has had occasion more than once to touch upon that subject, and we need not repeat what has heretofore been said regarding the limitations of this act.    *Lacey* v. *Lacey,* 189 Mich. 271; *Cole* v. *Cole,* 193 Mich. 655; *Litynski* v. *Litynski,* 227 Mich. 502; *Walker* v. *Walker,* 228 Mich. 165.

The decree of absolute divorce must be set aside and one granted for maintenance under the statute.    At the time of the hearing in this case defendant was earning $140 a month.    During the pendency of the suit he deeded to plaintiff his interest in the incumbered home, from which she realized about $3,300, and by order of the court paid her temporary alimony of not less than $40 a month, and part of the time $50.    The decree of the lower court as to payment of plaintiff's hospital bills and delinquent alimony up to the time of the decree will not be disturbed.    Upon this record we conclude that plaintiff should be

granted, for her maintenance, from the date of the decree in the lower court, $40 a month, payable at the end of each month, so long as defendant is earning the wages shown at the time of the hearing, with right of defendant to appeal to the trial court for modification, under changed conditions.     Plaintiff will recover costs of both courts.

BIRD, C. J., and SHARPE, FELLOWS, WIEST, CLARK, and McDONALD, JJ., concurred.

Justice MOORE took no part in this decision.