GRIDER *v.* GRIDER.

(*Knoxville,* September Term, 1944.)

Opinion filed May 5, 1945.

WHITAKER, HALL, HAYNES & ALLISON, of Chattanooga, for plaintiff in error.

C. G. MILLIGAN and WILL F. CHAMLEE, both of Chattanooga, for defendant in error.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

In this case a divorce was granted to Mary Jo Grider by decree of the circuit court of Hamilton County. The

couple had two children. By order of the court the custody of the child Kathleen Garnier Grider was awarded to her father, the defendant Charles W. Grider, and the custody of the child Marilyn Diane Grider was awarded to the plaintiff Mary Jo Grider, subject to the right of each parent to see and visit the child in the custody of the other parent at reasonable times and places. The cause was retained in court under the statute for further orders respecting the custody of the children, etc.

Later the plaintiff, Mary Jo Grider, married a soldier named J. Howard Clayton. On June 17, 1944, Clayton and his wife, plaintiff in the divorce suit, filed a petition in the divorce case in which it was sought by J. Howard Clayton to adopt the child Marilyn Diane Grider as his own daughter to become his legal heir.

No notice of this petition was given to the defendant, the father of the child. On July 5, the circuit judge entered an order reciting that Clayton was a proper person to share the custody of the child with her mother and that it was for the best interests of the child that she be adopted and become the heir of Clayton and that it would be advantageous to the child to change her name to that of Clayton. Thereupon it was decreed that Marilyn Diane Grider be and become the adopted daughter of Clayton and that her name be changed to Clayton and that she have the rights and privileges as the daughter of Clayton, etc., etc.

On August 31, 1944, Grider, the father of the child Marilyn filed a petition, supported by affidavit, in which he alleged that he had no notice whatever of the adoption proceedings, set out various reasons why it was not for the best interests of the child to be adopted by Clayton and to have her custody committed to Clayton and

his wife, and prayed that the adoption proceedings be set aside.

A demurrer was filed to this petition by the child's mother based on two grounds. (1) That by former. decree the exclusive custody and control of the child Marilyn was committed to her (the mother) and that the father was not entitled to any notice of the adoption proceedings. (2) That the decree of adoption was entered more than thirty days before the petition of the father, in the nature of a cross-bill, was filed and that the adoption decree had therefore become final.

This demurrer was sustained by the circuit judge and the petition or cross-bill of the child's father was dismissed. An appeal was taken and granted to this Court.

We think the trial judge was in error in sustaining this demurrer. The petition for adoption really should not have been entertained in the divorce case. The petition brought forward a matter wholly foreign to the objects of the original proceedings. Chambliss' Gibson's Suits in Chancery, Sec. 796.

We may, however, as the Court has often done, treat the petition for adoption as an original suit and deal with it accordingly. So treated, the demurrer to the petition of the father therein should have been overruled upon the authority of *In re Knott*, 138 Tenn. 349, 197 S. W. 1097. The father was entitled to notice of the adoption proceedings.

We do not think that the order of the court giving to the wife custody of this child deprived the father of all his rights respecting the little girl. The right to visit and see her at reasonable intervals was reserved to him and of course he had the right to apply to the court at any future time for a modification as to the order of custody if the child's interests demanded. The effect of

the adoption of the child was to give to the adopting parents the same custody and control as though it were their own by birth. Faw, P. J., in *Rogers* v. *Baldridge,* 18 Tenn. App. 300, 76 S. W. (2d) 655, 663. And this right of the adoptive parents to the custody and control exists even against the child's own parents. See also 2 C. J. S., Adoption of Children, sec. 56, page 447; 1 Am. Jur. 651.

We think that the father of this child was entitled to be heard before any such rights respecting the little girl as those of an adoptive father were conferred on another man. This even though the mother and father were divorced and the custody of the child (subject to change) was committed to the mother.

It was said in *In re Knott, supra* [138 Tenn. 349, 197 S. W. 1098], that an adoption "could not be legally adjudged unless the parents should have notice of the proceeding or voluntarily appear." This ruling was not questioned in *Magevney* v. *Karsch,* 167 Tenn. 32, 65 S. W. (2d) 562, 92 A. L. R. 343, insofar as the parents of the child were concerned. We said in the latter case (page 50 of 167 Tenn., page 568 of 65 S. W. (2d), 92 A. L. R. 343): "The limit of that decision [*In re Knott*] is that a decree of adoption passed in a case to which the living parents . . . were not made parties is void as to such parents." Within its limits, which include the case before us, *In re Knott* is controlling and that decision requires the holding that the decree of adoption of Marilyn Diane Grider is void and of no effect as to the child's father:

As to the second ground of demurrer to Grider's petition, that more than thirty days had elapsed since the entry of the adoption decree, it is sufficient to say

that such decree being void as to the father the thirty-day rule has no application.

There appears to have been a substitute service by order of the court on Mary Jo Grider Clayton herein upon her attorney. We do not find in the record any substitute service on Clayton himself, although he and the present Mrs. Clayton were both represented in the adoption proceedings by the same attorney and were both out of the State at the time Grider's petition was filed. Clayton himself did not plead to Grider's petition. There should be substitute service on his attorney before final decree invalidating the adoption decree.

The trial judge retained the petition for answer by Mary Jo Grider Clayton and a hearing as to the custody of the little girl and that question is open—whether the mother should continue to have custody. The case will therefore be remanded for answer to the petition and a hearing on the matter of present custody of the child Marilyn Diane Grider and further proceedings in accordance with this opinion.

The costs of appeal will be taxed to Mary Jo Grider Clayton and the costs below will be adjudged by the circuit court.