TYLER *v.* HUIET, commissioner of labor.

No. 15228.   OCTOBER 6, 1945.

*Smith, Kilpatrick, Clay & Cody, Devereaux F. McClatchey, A. L. Henson,* for plaintiff.

*Clifford Walker* and *J. Benton Evans,* for defendant.

BELL, Chief Justice. On March 20, 1945, Brown Tyler filed a petition against Ben T. Huiet, commissioner of labor, seeking the writ of mandamus to compel the commissioner to issue to him a credit memorandum for a stated sum of money, representing the difference between the amount which the petitioner, as an employer under the unemployment compensation law, had paid as contributions for the year 1942, and the first quarter of 1943, and a lesser amount which he alleges would be his liability on application of an amendatory act approved March 20, 1943; contending that this act applied by its terms retroactively to the periods stated, and that, under the law as thus amended, he was entitled to have such credit memorandum issued to him for credit on future liability for contributions. The court sustained a general demurrer and dismissed the petition, and the plaintiff excepted.

The case may be better understood, if a brief statement of the law is first made. The original unemployment compensation act levied fixed rates of contributions, applicable alike to all employers who were subject to its provisions. Ga. L. 1937, pp. 806, 819-20. The act was amended in 1938, but not as to any matter that is material in the instant case. Ga. L. Ex. Sess. 1937-38, p. 356.

In 1941 another amendment was passed. By that amendment it was provided, among other things, that each employer shall pay annual contributions equal to 2.7 percent of the wages paid by him during the year 1941 and during each calendar year thereafter, this being the "standard rate" applicable to all employers; but the amendment also provided for variations below the standard rate according to each employer's favorable employment experience. It provided a scale by which an employer might claim a lower rate, based on amounts of unemployment benefits paid by the department to his employees, as compared with the total contributions made by him. Ga. L. 1941, p. 532. Under the terms of this act, a favorable employment experience of not less than thirty-six consecutive months ending on the computation date was necessary in order to obtain a lower than standard rate. It did not provide for combining the experience of an employer with that of his predecessor, but each employer had to establish his own favorable employ-

ment record in order to claim a lower-than-standard rate. *Schwob Manufacturing Co. v. Huiet,* 69 *Ga. App.* 285 (25 S. E. 2d, 149).

Thus the law stood until March 20, 1943, when the amendment that is here chiefly in question was passed. Ga. L. 1943, p. 613. By section 1 of that act, a successor employer was given the right to combine his own employment experience with that of his predecessor for the purpose of establishing a favorable employment record for the requisite period. Sections 2 and 3 were as follows: "Section 2. The provisions of this act shall apply to all contributions payable by a successor, regardless of whether or not such successor acquired the business, or assets thereof, from his predecessor prior or subsequent to the effective date of this act. Section 3. As regards the rates of contribution, the provisions of this act shall become effective as of January 1, 1942, and shall apply to all contributions thereafter payable by an employer affected hereby, as respects business previously or thereafter acquired; however, neither this section, nor any other section of this act, shall be construed to authorize or require the refund of any sums lawfully paid into the trust fund created by section 9 (a) of the original act, or to otherwise use any of the same except to pay compensation benefits." Section 4, the only remaining section, contained the usual repealing clause.

The petition in the instant case alleged substantially the following: Tyler & Company, a corporation, was dissolved on March 18, 1940, and since that date the business formerly carried on by it has been conducted by the plaintiff, Brown Tyler, as an individual. On March 29, 1937, Tyler & Company qualified as an employer under the unemployment compensation law, and thereafter paid contributions as required by the act until it was succeeded by the plaintiff on March 18, 1940. From and after that date, the plaintiff as an employer paid the required contributions, having paid them for the year 1942, and the first quarter of 1943, at the standard rate of 2.7 percent. After the passage of the act of March 20, 1943, permitting such combination, the plaintiff combined his own employment experience with that of his predecessor, Tyler & Company, and, on the basis of the combined record, became entitled to a rate of 1.5 percent for the year 1942 and a rate of 1 percent for the first quarter of 1943, under the act of 1941 as amended by the act of 1943. The commissioner recog-

nized the petitioner as the successor of Tyler & Company, and combined their employment experiences. He also recognized that such combined employment experience would entitle the petitioner to the lower ratings, but refused to allow the more favorable rates for the periods in question, contending and ruling that the amendatory act of March 20, 1943, is in violation of the constitution of Georgia in so far as it would allow the petitioner a less-than-standard rate in advance of the date of its approval, to wit, March 20, 1943.

The petitioner alleged the amount of contributions that had been paid by him for the periods in question, and the lesser amount that would have been due if he could at that time have combined his favorable employment record with that of his predecessor, the alleged difference being $326.12. The petition did not pray for a refund of the difference, but sought a judgment and decree requiring the commissioner to issue a credit memorandum therefor, to be applied as a credit on future liability for unemployment compensation contributions.

Under the allegations of the petition, it appears that the contributions for the year 1942 were paid before the passage of the act of March 20, 1943. It is not clear when payment was made for the first quarter of 1943; but, for reasons evidently satisfactory to themselves, counsel on both sides have argued the case as if all payments were made before the passage of that act, making no distinction between the payments for the two periods. We shall deal with the case in like manner.

We are of the opinion that the court properly sustained the general demurrer and dismissed the petition. The plaintiff's right to lower-than-standard rates depended on favorable employment experience, and he could not establish a favorable experience for the requisite period without combining his own experience with that of his predecessor. Hence, under the law as it existed before the act of 1943, he was liable for the standard rate, and he paid the tax or contributions accordingly.

Section 9 (a) of the original act, as referred to in section 3 of the amendment of 1943, is as follows: "Establishment and Control. There is hereby established as a special fund, separate and apart from all public moneys or funds of this State, an unemployment compensation fund, which shall be administered by the com-

missioner exclusively for the purposes of this act. This fund shall consist of: (1) all contributions collected under this act, together with any interest thereon collected pursuant to section 14 of this act; (2) all fines and penalties collected pursuant to the provisions of this act; (3) interest earned upon any moneys in the fund; (4) any property or securities acquired through the use of moneys belonging to the fund; and (5) all earnings of such property or securities. All moneys in the fund shall be mingled and undivided."

Section 14 (d) of the original act, as amended in 1941, provided for refunds in the event the commissioner "shall determine that such contributions or interest or any portion thereof was erroneously collected"; but even then an actual refund would not be allowed if an adjustment could be made in connection with subsequent contributions payable by the employer. Ga. L. 1937, p. 836, sec. 14 (d) ; Ga. L. 1941, p. 552, sec. 14 (d).

The payments made by the plaintiff for the year 1942 and the first quarter of 1943, these being the periods in question, were not "erroneously collected" within the meaning of section 14 (d) providing for refunds, since the amounts were paid and collected in accordance with the law as it then existed; nor did the act of 1943 purport in terms to declare them erroneous to any extent. This act, so far as favorable to the plaintiff, after providing for tacking employment experiences, declared only that its provisions should apply to all contributions payable by a successor regardless of when the succession took place, and that, as regards rates of contribution, its provisions "shall become effective as of January 1, 1942, and shall apply to all contributions thereafter payable by an employer affected hereby, as respects business previously or thereafter acquired." Even assuming that, if the act had stopped here, the plaintiff in this case might be entitled to some adjustment, yet the act contained no clear statement that its provisions would be applicable to contributions already paid; and when we go further and consider the concluding clause, beginning with the word "however" in section 3, we think that it was the intention of the legislature to allow neither a refund nor an adjustment with respect to any sums already lawfully paid, not even an adjustment against future liability. This last clause was apparently added for the purpose of clarifying all that had gone before, declaring

in express terms how the act should be construed, or rather how it should *not* be construed, and inhibiting any construction that would permit the use of any of such sums except to pay compensation benefits.

It is a well-settled rule of construction that if there is a conflict between two parts of a single act, the latest in position will be declared to be the law, since it is presumed to be the last expression of the legislative will. *Gilbert* v. *Georgia R. & Bkg. Co.,* 104 *Ga.* 412 (30 S. E. 673) ; *Lamar* v. *Allen,* 108 *Ga.* 158 (5), 164 (33 S. E. 958) ; *Darby* v. *Deloach,* 190 *Ga.* 499, 501 (9 S. E. 2d, 626). The last expression here not only excludes refund of any sums that had already been lawfully paid into the trust fund, as created by section 9 (a) of the original act, but would also prevent the use of any of the same except to pay compensation benefits. The plaintiff recognizes that he is not entitled to a refund, but insists that he is entitled to a credit memorandum to be used as an adjustment in accordance with section 14 (d). In our opinion, the issuance of such a credit memorandum is prohibited just as positively as a refund, in that it would be a use other than to pay compensation benefits, to wit, allowing a credit against the future liability of an employer.

Counsel refer in their brief to section 9 (b) of the original act, as amended by sections 12 and 13 of the act of 1941, requiring, among other things, that the custodian shall maintain "within the fund" three separate accounts as there described, including a clearing account, from which refunds may be made. We see nothing in these provisions that could be of aid to the present plaintiff, since the question to be determined depends upon the proper construction of the act of 1943, under which, as we have seen, neither a refund nor the issuance of a credit memorandum would be permissible as applied to the contributions under consideration.

It was alleged in the petition that the commissioner refused to allow the credit claimed solely because of his ruling and contention that the act of 1943 as invoked by the plaintiff is unconstitutional in so far as it would entitle the petitioner to a lower-than-standard rate in advance of the date of its approval. The commissioner, however, made no attack upon the statute in court, and nothing that we have said should be taken as an implication regarding its validity or invalidity under the constitution. It is true that, if a

statute is reasonably susceptible of two constructions, one harmonizing it with the constitution and the other rendering it inconsistent therewith, the former construction is generally to be preferred; but, in view of the legislative intent as plainly manifested in the final clause of section 3, we do not reach a constitutional question, even by indirection, in this case.

*Judgment affirmed. All the Justices concur.*