928

In re ADOPTION OF A MINOR.
No. 9410.

United States Court of Appeals
District of Columbia.

Argued March 10, 1947.

Decided April 7, 1947.

Mr. Nicholas J. Chase, of Washington, D. C., for appellants.

Mr. Justin L. Edgerton, of Washington, D. C., with whom Mr. Leo A. Rover, of Washington, D. C., Guardian ad litem, was on the brief, for appellees.

Before GRONER, Chief Justice, and CLARK and PRETTYMAN, Associate Justices.

### PRETTYMAN, Associate Justice.

This case is here for the second time. The opinion in the first appeal is reported at 81 U.S.App.D.C. ——, 155 F.2d 870. The child involved was born March 1, 1944, and on March 7, 1944, the mother signed a consent to the adoption. The father was in naval service in the Pacific. The proposed adopters took immediate custody of the child. The mother promptly repented her consent and attempted to withdraw it. She served notice to that effect and, when the petition for adoption was filed, she answered that the father had acknowledged paternity and that she had withdrawn consent. The Board of Public Welfare, to whom the petition was referred, advised against the adoption, reciting that the natural father had acknowledged paternity and contributed to the child's support. The guardian ad litem of the infant, an eminent and respected member of the bar, advised that in his opinion the court was without power to grant the adoption and that, even if it had that power, he concurred in the report of the Board of Public Welfare and recommended against the adoption. Hearing was had in the absence of the natural father. The mother vigorously opposed the adoption. The trial court held that she could not withdraw her consent and that the consent of the father was not required. Before the time for appeal had expired, the mother moved to vacate the decree and to reopen the case for the introduction of further evidence, upon the ground that the natural father had returned to this country and had married the mother, and she submitted his affidavit in which he stated: "* * * I freely acknowledge that I am the father of the child * * * I have never consented that our child should be adopted by any one and do not now consent to this adoption. * * *" It had already been shown that the father had voluntarily contributed substantial sums toward the care of the mother and the child up to the time he learned that the child had been taken by the adopters. The trial court denied the motion. Appeal to this court followed.

The statute in this jurisdiction is clear beyond any possibility of doubt that if the natural father of a child born out of wedlock "has both acknowledged the adoptee and contributed voluntarily to its support", his consent is necessary to an adoption, unless certain conditions are shown which do not appear and which the court did not find in the present case.[1]

The only point of difficulty is not in the statute but is the means or method by which it is to be ascertained whether the natural father has acknowledged the child. We held that that acknowledgment must be a definitive act. We also held that since the record showed that this natural father had had no definite opportunity, prior to the filing of his affidavit, to register his definitive attitude, the judgment of the lower court must be reversed and such opportunity afforded him.

Upon the rehearing the father appeared and testified unequivocally that he acknowledged the child; that he had never approved the adoption; that he had never been asked about it officially or otherwise; that he knew about the adoption after it

---

[1] D.C.Code 1940, § 16—202.

happened; and that he had never received any communication from counsel for the adopters, or from the adopters, or from the Board of Public Welfare, or from the guardian ad litem, or from counsel for the mother in connection with the case. He further testified that while at one time he wrote that he would contest paternity, he had never actually denied that he was the father of the child. The letter referred to was written in September, 1944, at which time his ship was in the combat area in the Pacific, and just prior to the time it was put out of commission by gunfire. He described the confusion, fatigue and embarrassment under which he was suffering at the time that letter was written. The trial court found as facts that the father had voluntarily paid approximately a thousand dollars between the conception and birth of the child for the medical care and support of the mother, that he had acknowledged the adoptee as his own, and that he had definitely refused consent to the adoption. The court further concluded that extraordinary cause why the consent of the natural father should be dispensed with had not been shown to the satisfaction of the court. The court thereupon dismissed the petition for adoption.

The appellant adopters say that the natural father returned to this country, arriving in Boston February 16, 1945; that he spoke to the mother over the telephone from Boston immediately upon landing, and that he then had thirty days' leave during which time he went to see his grandmother, who apparently had reared him and who was ill in Shreveport, Louisiana. They further say that the original hearing before the trial court was February 1 and February 26-27, 1945, the memorandum opinion of the court being filed March 2, 1945. Appellants therefore argue that the father is thus shown to have known of the pendency of the adoption proceedings and that his failure either to appear in the proceedings or otherwise to make known his acknowledgment was such a definitive act as to constitute a failure to acknowledge the child.

■ The argument gives point to the rule which we laid down in our opinion in the first appeal and which we here reiterate. There was a conflict in the evidence as to when the telephone call, which appellants offer as the critical event, occurred. While the father recollected it as being before his trip to Shreveport, the mother fixed it as being after that trip; and her mother quite vividly fixed the exact day and hour of the call because, she said, it was on the evening of the very day when the final decree was signed, which was March 19th. She herself answered the telephone and had to tell her daughter, who was hysterical over the proceedings of the day, that the father had returned to this country and was on the telephone. The father was quite emphatic in stating that the mother of the child was in a hysterical and incoherent condition at the time of the telephone call and that he could not understand much of what she had to say. There was in the original record a series of letters in which it is perfectly clear that the father admitted that the child was his. The only contrary note is the one expression in the letter of September, 1944, after the child had been taken by the adopters, in which the father said that he "would contest paternity". This difference in testimony as to the date of a phone call, and in the construction of one phrase in a letter written by this young father on board ship in the battle area, a contradictory note in a long correspondence, is vivid support for the view that the statute did not intend that the rights and obligations of the natural father of a child should depend upon uncertainties.

■ Our opinion upon the first appeal was a decision of first impression upon this important subject. Adoption proceedings are of such nature that the law in respect to them should be clearly understood. Repetition of the considerations which led us to the conclusions expressed is, therefore, not improper. In our view, the terms of the statute are clear and logically arranged. The first pertinent section of the statute,[2] after conferring jurisdiction upon the District Court in adoption cases, gives that court authority to make rules which will bring fully before the court for consideration the interests of the natural parents.

---

[2] D.C.Code 1940, § 16—201.

The plural, "parents", is used, and by biological necessity that term includes the father. The word "fully" is used and emphasizes the importance attached to the natural parents' participation in the proceeding. The provision clearly requires that the interests of the natural father be brought before the court by means of special rules of procedure which the court shall make.

■■ The statute then requires that the petition for adoption shall state, so far as known, the name, etc., of the natural parents. It requires that the court issue a rule, with a copy of the petition attached, to be served in such manner as the court shall prescribe, directed "to all parties to the petition who do not appear and consent to the adoption". That obviously requires that unless a known natural father voluntarily appears and consents pursuant to some unofficial notice or knowledge, he must receive an official notice. His name, age, race, occupation and address, when known, must be stated in the petition. "Parties to the petition" must include all those persons whom the statute requires to be named in the petition. The statutory requirement that he be named and described when known is not an empty phrase. If these persons required to be named are not "parties to the petition", nobody is except the petitioners. The statute does not specify a formal respondent or respondents, but certainly it does not mean that the petitioners, and they alone, are to be served with a copy of their own petition. In the case at bar the name, age, race, occupation and address of the father were known, if not to the petitioning adopters certainly to everybody else involved, including the mother, the guardian ad litem, the Board of Public Welfare, the mother's parents and her doctor. The statute does not say that the court shall direct service upon the natural father when knowledge of his identity is formally admitted by the petitioning adopters. It says that he shall be served when he is known, and that means known to the court by some reasonable means of acquiring that information. It is hard to imagine a case in which the identity of the father was more fully and widely known than in the present case.

■ The provisions of the next section of the statute are likewise clear. The first sentence provides that no decree of adoption shall be made unless the court shall find that the natural parents have consented. Again the plural, "parents", is used. This sentence, then, confers a basic right of consent upon the natural father. The second sentence provides that if the child be born out of wedlock the consent of the father shall not be necessary unless he has acknowledged the child and contributed voluntarily to its support. The acknowledgment and the contribution are both questions of fact. Thus the statute prescribes two premises for the exercise of the right of consent conferred upon such a father by the first sentence of the section. Both the premises are facts.

■ The ascertainment of the fact of acknowledgment is the problem presented in the case at bar. It is argued that this fact should be ascertained by testimony concerning the father's actions and attitude over the period of time from his initial knowledge of the probable birth of the child until the hearing. The confusion and uncertainty which would result from reliance upon any such testimony is perfectly obvious. The wisdom of requiring, as the statute does, a definitive act is clear. A father might acknowledge paternity to the mother but deny it to everyone else. He might acknowledge it half the time and deny it half the time. He might acknowledge it once and deny it a thousand times. He might acknowledge it when intoxicated and deny it when sober. He might use equivocal statements on all occasions. Some witnesses might say that upon a given occasion he said thus-and-so, and other witnesses deny it. In these and innumerable other suppositious circumstances, must the isolated action, or the course of action, of the father be analyzed and weighed to discover whether there has been the acknowledgment specified by the statute? Is almost every adoption case to involve a mystery of fact concerning the attitude of the father? We are of clear opinion that the statute has no such meaning. The statute does not mean that a question so vital to the child and basic in the rights of the natural father should be left to the chance

932

or caprice of conflicting testimony as to what his action or word had been upon different occasions, under different conditions, and at different times. The statute rests the welfare of the child and the rights of the father upon a more substantial basis. It requires an act which is clear, definite and unimpeachable; to be effective, it must be registered in some manner with the court for the purposes of the proceeding.

■ That requirement does not mean that a failure to acknowledge must be affirmatively registered with the court to be effective. We did not so hold. But we did hold that a failure which is sufficient to forfeit the right of consent must be a conscious failure, if it is practicable for the court to make the father conscious of the proceedings. In other words, the father cannot be concluded by a failure to act, if he is unaware that the occasion for action has arisen. The matter is clear upon the face of the statute.

■ The statute requires that the natural father assert his rights; he must acknowledge the child. He cannot, by failure to act, prevent an adoption. This is a wise provision, because, if the father be unknown, or his whereabouts be unknown, or he be recalcitrant or merely indifferent, the welfare of the child ought not to be impeded. Thus the two clear basic provisions of the statute are that the natural father has a right if he acknowledges the child (other conditions precedent being satisfied) but has no right if he fails to acknowledge. Put together, those provisions require that he be afforded an opportunity to assert his right by acknowledgment, if such opportunity be possible or practicable under the circumstances. The time and manner in which the opportunity should be afforded are left to the District Court. We do not mean that his opportunity should be held

open, to the vast uncertainty of the outcome of the proceedings. He may be required to act early and promptly. He may be permitted to act voluntarily, in some such manner and at some such time as the mother acts in giving consent. The statute left the design for such opportunity to the District Court, conferring, as we have seen, authority upon that court to make such rules as will bring fully before the court the interests of the parents. In our prior opinion we called attention to the fact that rules to fulfill that implicit statutory mandate have not been adopted by the District Court. Until they are adopted, confusion will continue to exist in attempts to comply with the clear requirements of the statute as to the natural father.

We are discussing, of course, only the act of acknowledgment and how it is to be ascertained. We are not discussing whether the consent of the father may be dispensed with by the court. Whether his consent should be dispensed with, acknowledgment being either present or absent, is a different and separate question which the last sentence of this section of the statute places within the discretion of the court under named circumstances, among which is extraordinary cause which satisfies the court.[3]

■ Obviously this last sentence contemplates the dispensing with a consent to which the natural parent or parents have a right under the preceding sentences. If the parent has no right of consent, such consent need not, indeed it hardly could be, dispensed with by the court. If the natural father of a child born out of wedlock has not acknowledged the child, the statute itself dispenses with his consent. The last sentence of the statute is a broad grant of discretionary power. It applies even to legitimate children and even where the at-

---

[3] D.C.Code 1940, § 16—202, last sentence:

"The consent of a natural parent, or parents, or adoptive parents by a previous adoption, may be dispensed with (1) where after such notice as the court shall direct it shall appear to the court that such person or persons can not be located; (2) where they have been permanently deprived of custody of the adoptee by court order; (3) where it shall appear to the court that they have abandoned the adoptee and voluntarily failed to contribute to his or her support for a period of at least one year next preceding the date of the filing of the petition; or (4) where investigation has shown to the satisfaction of the court extraordinary cause why such consent should be dispensed with."

titude of the parents is clear. It contemplates that even where a natural parent otherwise has the right to consent or to refuse to consent, the court may be satisfied that under the circumstances the refusal of the parent to consent should not be permitted to interfere with the clear welfare of the child.

In the case at bar, as we have indicated, the court affirmatively concluded that no extraordinary cause for which consent of the father should be dispensed with was shown. The controversy with which we are now dealing concerns only the determination of the fact as to whether the natural parent has or has not acknowledged the child. The letters of this father over a period of months, with one exception, as we have said, were filled with expressions which showed his acknowledgment of the child; he contributed regularly each month until after the child had been taken by the adopters; he married the mother promptly after his return to this country; he immediately registered with the court his acknowledgment of the child and his refusal to consent; and, so far as the record shows, he has not, since returning to this country, deviated from that course of action. Critical, however, is the fact that when the first official opportunity was offered, he asserted his acknowledgment and refused to consent.

Cases such as this have always been the unquestioned acme of difficulty in the administration of justice. The forfeit is the life of the child, wholly unconscious of the struggle about it. Both contesting pairs of parents act from the highest motives. Both are absorbed in affection for the child. The harshness of the decision in the present case is, however, mollified by the fact that it is not a sudden event. The adopting parents have known since about a month after they took the child, almost three years ago, that the mother had repented her consent and would contest the adoption. They knew that she insisted throughout that the father's consent was necessary and would not be given. So, while the result of the decision is to take the child from the proposed adopters after three years of affectionate care, for which they are due the highest commendation, they were fully aware at all times of the unremitting insistence of the natural mother from the beginning, and of the father from the time of his return to this country.

Affirmed.