## 31714. ALLEN *et al.* v. MORGAN *et al.*

DECIDED OCTOBER 3, 1947.

*Anderson, Connerat, Dunn & Hunter, J. P. Houlihan,* for plaintiffs.

*Shelby Myrick, Williams, Cocke & Williams,* for defendant.

Felton, J. Assuming but not deciding that the contract between the Allens and the Morgans was signed by the respective parties with knowledge of who the other parties were, or that under the circumstances the contract was binding without such knowledge, the big question in this case is what questions the court has before it in an adoption proceeding, and what are its functions and powers. The Allens contend that a binding contract of adoption was made and that it is irrevocable and that it cannot be avoided by a showing of duress to which they were not parties. This contention may have been valid before the passage of the revised adoption laws of 1941. The act provides: "Except as otherwise specified in the following sections, no adoption shall be permitted except with the written consent of the living parents of a child." Ga. L. 1941, p. 301; Code (Ann. Supp.), § 74-403. Under the old law and the rulings of the Supreme Court thereunder the contentions of the Allens might be well taken, but we think that the letter and spirit and purpose of the new law is to give to the court full and unrestricted power to examine into the nature and kind of consent by parents to an adoption, not only because it is absolutely prerequisite to the validity of an order granting a prayer for adoption, but because the wisdom of the grant, the welfare of the child and of the other parties, as well as the public policy of the State is involved. So it is our view that whether the consent to an adoption is contained in a contract to adopt, or in a separate instrument, it is the duty of the court trying the case, to examine into the reality and voluntariness and freedom of the consent, and if the court finds from competent evidence that the consent was not freely and voluntarily given because of circumstances which justified the conclusion, or that it was produced through coercion or under undue influence, it is its duty to deny the adoption; it matters not by whom the coercion or undue influence is exerted. The rules in adoption cases are quite different from those involving custody alone and from cases involving virtual adoption. Our law does not provide for the enforcement of a contract to adopt. It does not provide that the child shall

be declared to be adopted by those who have a clear legal and equitable right to adopt it under a contract. It provides that the parents must consent to the adoption in spite of any contract they may have made which is binding on both parties in an action between them testing its validity. The action of the court in an adoption case is not controlled by the rules determining whether a contract of adoption should be enforced or not. Otherwise the requirement of consent of the parents is superfluous, because a contract agreeing for a child to be adopted would be determinative on the question of consent. If the parents sought to avoid the contract they would have to attack it for fraud, duress or undue influence on the part of the other party, etc. Furthermore, the contract of adoption is absolutely irrelevant and immaterial in an adoption case other than on the question of consent. The contract otherwise has no bearing on the determination of the case. If consent not embodied in a contract can be inquired into by the court and found not to exist if induced by the duress of anyone, it may do so where the consent is embodied in a contract, and this is because the contract is relevant so far as consent is concerned. The only questions before the court are (1) do the parents consent, (2) are the adopting parents worthy and able to care for the child, and (3) is the adoption for the best interests of the child. The court is not required to declare the adoption unless all three facts unequivocally appear. (Were there evidence or question of abandonment, which is not in this case, our law, of course, dispenses with the consent of the parent or parents.) If there is no parental consent the court is required to deny the adoption. If either or both of the other factors are absent he may deny the adoption, and, of course, should, no matter how valid or binding a contract may have been entered into. Persons are presumed to know the law and parties contracting to adopt children in Georgia are bound to know that adoption can only be actually accomplished by judicial action under existing law. The vital question here is the genuineness of the consent and whether it was freely and voluntarily given. Under the quoted facts of this case we are of the opinion that the court was authorized to find that the consent of the parents was not freely and voluntarily given and to deny the adoption. Under this view the principle that an ordinary contract may not be avoided by duress which is not the duress of the other party

or his agent, or imposed with his knowledge and taken advantage of by him for the purpose of obtaining the agreement, does not apply to this contract made for the purpose of granting consent to an adoption to be petitioned for under the act of 1941. Numerous custody cases have been cited but they are not applicable to contracts of consent made with a view of adoption under the 1941 law. The act of 1941 is to be construed strictly against the applicant and in favor of the parent. *Glendinning* v. *McComas*, 188 *Ga.* 345 (3 S. E. 2d, 562). If the court was authorized to find that no consent was freely and voluntarily given the question whether a valid consent once given can be withdrawn before a final order is passed is eliminated. As indicated, we do not think that the court is bound in an adoption proceeding by contracts to adopt, otherwise the adoption law would have made provision for the recognition of such contracts. While the weight of authority is to the effect that consent for adoption, once given, may be withdrawn, and we do not specifically rule on the point, the effect of our ruling is to the same effect. On a final hearing of a case the court is required to inquire whether the adoption is for the best interests of the child. One consideration is whether the child will be secure and happy and unmolested in its new relationship, and the court could find as a fact that the parents' knowledge of the proceeding and their change of minds, made it to the best interests of the child that the adoption not be granted. This conclusion is the conclusion of the Welfare Department whose experience and study entitles its opinion to great weight. It would seem that the best way to obviate the serious consequences of a change of mind is to have the parents surrender the child to a child-placing agency, where the chances of discovery by the parents of the adoption proceedings are reduced to a minimum. The Allens contend that the evidence shows that the Morgans are proceeding solely at the instigation of Mrs. Dwyer. We think the evidence demands a finding from the positive evidence, uncontradicted by circumstances inconsistent therewith, that this contention is not well founded. The Allens also contend that the Morgans are estopped to press their claim to the child. We think it would be unsound and dangerous public policy to say that an estoppel could arise from such facts as appear here, which occurred just prior to and pending the hearing of a petition for adoption.

It would seem that parties seeking an adoption would be charged with whatever eventualities might result from the final decision. Neither contracts nor estoppels can be permitted to limit the court's complete power and authority to consider and adjudicate the questions the adoption law places upon it. The fact that the preliminary order was revoked is immaterial. The final order denying the adoption automatically revoked the interlocutory order. In fact it had served its purpose and was functus officio at the time of the final order.

We cannot say as a matter of law that the court did not have the power and authority to find, under the facts of this case, that it was to the best interests of the child itself that it should be with and returned to its natural parents. Such is the most vital and paramount question to be considered, and as unfortunate as the result will be to splendid and innocent people, the authorized discretion of the court in this case cannot be disturbed.

*Judgment affirmed. Sutton, C. J., and Parker, J., concur.*