34250. HERRIN *et al. v.* GRAHAM.

DECIDED OCTOBER 15, 1952—REHEARING DENIED NOVEMBER 25, 1952.

*Kimzey & Kimzey,* for plaintiffs in error.

*Glenn W. Ellard, Ellard & Frankum, Bess Blake,* contra.

CARLISLE, J. The Supreme Court, in determining its jurisdiction and in transferring this case to this court, excised the attempted constitutional question and gave a brief history of the case. See *Herrin* v. *Graham,* 209 *Ga.* 281 (71 S. E. 2d, 550). The only questions with which we are here confronted are the validity of the trial court's judgment denying the prayers of the petition for adoption and the validity of the judgment awarding custody of the child to its natural mother.

1. The modern tendency is to give adoption statutes a liberal construction in order to effect their benevolent purposes and to promote the welfare of the child sought to be adopted. Under the Georgia statute, the only questions before the court

in a proceeding for the adoption of a child are: (1) do the natural parents consent to the adoption of the child, or, in some instances have they abandoned the child so as to dispense with their consent as a prerequisite; (2) are the adopting parents worthy and able to care for the child; and (3) is the adoption for the best interest of the child? The court is not required to declare the adoption unless all three of these factors unequivocally appear. If there is no parental consent and the natural parents have not abandoned the child, the court *is required* to deny the adoption. If either or both of the other factors are absent, the court *may deny* the adoption. *Allen* v. *Morgan*, 75 *Ga. App.* 738, 747 (44 S. E. 2d, 500).

There was evidence that the child-welfare worker of Habersham County, the county of the residence of the child and the petitioners for adoption, investigated the home of the petitioners, and, in her opinion, the petitioners' home was not a suitable and proper one for the child. There was evidence that the adopting father had been convicted in the Superior Court of Habersham County of fornication in 1932 and of seduction in 1943. This evidence alone was sufficient to warrant the trial court's denial of the prayers of the petition for adoption, whether or not the parents of the child had consented to the adoption or abandoned the child. *Allen* v. *Morgan*, supra.

2. The validity of the court's action in divesting the petitioners of the custody of the child and in awarding custody to the natural mother presents for solution a question of somewhat greater difficulty, at first glance.

It would seem that, in order for a superior court of Georgia to have jurisdiction of an adoption proceeding, the child to be adopted must be domiciled in, or be a resident of this State. See Code (Ann. Supp.), § 74-401; *Portman* v. *Mobley*, 158 *Ga.* 269 (123 S. E. 695). A proceeding for adoption in which the child is not domiciled in this State is void. *Portman* v. *Mobley*, supra. It appears that the child here under consideration was born in the State of Tennessee. From the decree of the Juvenile Court of Johnson City, Tennessee, which was introduced in evidence in this case, it appears that the father of the child relinquished his parental authority to that court, which decreed that "said child be committed to the care and

custody of Mr. and Mrs. Everett Herrin [the petitioners in this case], Cornelia, Georgia, on February 18, 1950." Under this evidence, and giving full faith and credit to the decree of the Tennessee court, as counsel for the petitioners insist we must, it is clear that the child's domicile was changed from Tennessee to Georgia, and this is in accord with the provisions of our statute, Code § 79-404, which provides: "The domicile of every minor shall be that of his father, if alive, unless such father shall have voluntarily relinquished his parental authority to some other person. In such event the domicile of the minor shall be that of the person to whom parental authority has been relinquished." It is alleged in the verified petition that the child "is now residing with petitioners in their home in Habersham County." The court, having jurisdiction, had jurisdiction to the fullest extent granted it under the adoption statute, and was confronted with one paramount question which, in all controversies or proceedings for the custody of children, is the welfare and best interests of the child. In this respect, the adoption proceeding is somewhat analogous to the proceeding under a writ of habeas corpus. The child is *in custodia legis*. While the statute makes no specific provision for the disposition of the child prior to the issuance of the interlocutory order other than to refuse an interlocutory order granting temporary custody to the petitioners for adoption and to dismiss the petition (Code, Ann. Supp., § 74-413), it is provided that the court may on its own motion revoke the interlocutory order granting temporary custody (Code, Ann. Supp., § 74-415), or may, after final order of adoption, annul the adoption, and provide for the proper disposition of the child as may be to his best interest and to that of the State (Code, Ann. Supp., § 74-416). It seems to us that, if the court may provide for the disposition of the child according to its best interests at those stages of the adoption proceeding, and if the child is *in custodia legis*, as we have said, it is no straining of the construction of the adoption statute to say that the legislature intended that the court should be charged with determining the best interests of the child at any stage of the adoption proceeding. Therefore, notwithstanding the fact that the mother was held, under the Tennessee decree, to have abandoned the child, there was evidence that she is now

capable of caring for the child, and we find no evidence of record that the court abused its discretion in awarding the custody of the child to its natural mother. See, in this connection, *Jernigan* v. *Garrett*, 155 *Ga.* 390 (3) (117 S. E. 327).

*Judgment affirmed. Gardner, P. J., and Townsend, J., concur.*