38792.   CARPENTER v. FORSHEE *et al.*

Decided May 31, 1961.

*James E. Hardy, William N. Robinson,* for plaintiff in error.
*Joseph Lefkoff, Hyman, Abram & Young,* contra.

HALL, Judge. ■ Plaintiff in error's objection ·that the Fulton Superior Court lacked jurisdiction because the child's residence was not in Fulton County, but in Colorado where his father resided, is without merit. The father and mother of this child were divorced by a decree of the Superior Court of Cobb County on May 16, 1951. · This decree awarded permanent custody of the child to the mother. The decree was introduced as evidence on the plea to the jurisdiction. The father testified that the mother was ·awarded custody of the child and that. the child had been in the State of ·Georgia since 1951. The evidence showed that the petitioner, the child's mother, and the child resided in Fulton County, and that the child was in the mother's custody.

When the mother· of a child has been awarded its custody by a divorce decree and she actually exercises custody, the domicile of the child follows that of the mother. 28 C. J. S. 21, § 12; 17A Am. Jur. 248, § 69; 13 A. L. R. 2d 306, 313, cf. *Crowell v. Crowell,* 190 Ga. 501 (9 S. E. 2d 628) ; *Beavers v. Williams,* 199 Ga. 113, 127 (33 S. E. 2d 343) ; *Dutton v. Freeman,* 213 Ga. 445 (99 S. E. 2d 204).

As to the questions of jurisdiction over the subject matter and venue, Ga. L. 1941, p. 300, as amended, Ga. L. 1956, pp. 695, 696 (*Code Ann.* § 74-401), provides: "The superior courts of the several counties shall have exclusive jurisdiction in all matters of adoption, except such jurisdiction as shall be granted to the juvenile courts. All petitions for adoption shall be filed in the county in which the adopting parent or parents reside. ... ." Here the. adopting father· resided in Fulton County. It is clear therefore that the Fulton Superior Court had jurisdiction of the subject matter (adoption) and was the proper venue for this suit.

While the defendant in error contends that the language found in *Portman·v. Mobley,* 158 Ga. 269, 273 (123 S. E. 695) ; *Herrin v.· Graham,* 87 Ga. App. 291, 292 (73 S. E. 2d 572) ; and *Altree v. Head,* 90 Ga. App. 601, 604 (83 S. E. ·2d 683) to the ·effect that "in order for a superior court of Georgia to have jurisdiction of an adoption proceeding, the ·child to be adopted must be

domiciled in, or be a resident of this State" is in conflict with the above 1941 act, it is not necessary in this case to pass upon this contention.

■ The statutory provisions for service in adoption cases are as follows: ". . . one conformed copy of the petition together with a copy of the court's order [setting an interlocutory hearing] thereon, shall be served on the party or parties whose written consent to the adoption is required under sections 74-403 to 74-406, unless service of said petition and *notice* has been duly waived in writing. If any such party or parties be a nonresident of the State, then the clerk shall send to said party or parties by registered mail a conformed copy of said petition and order; but if the address be unknown, then notice shall be given by publication once a week for four weeks in the of- ʲal organ of the county where such proceedings are pending." (Emphasis supplied). Ga. L. 1941, pp. 300, 302 (*Code Ann.* § 74-408).

"At any time after the expiration of six months from the date of the interlocutory order, the court shall set down for a hearing in chambers the question of whether the adoption sought shall be made final, and *notice* thereof shall be mailed by the clerk to the State Department of Public Welfare and to the person or persons on whom the petition is required to be served under section 74-408. Any person objecting to the entry of a final order of adoption shall file such objections in writing prior to the date assigned for a hearing, which objections shall be passed on by the court at such hearing. . ." (Emphasis supplied). Ga. L. 1941, p. 305 (*Code Ann.* § 74-414).

Ga. L. 1941, p. 301, as amended (Ga. L. 1950, pp. 289, 290; *Code Ann.*, § 74-404), provides: "Consent of the parents shall not be required where a child has been abandoned by its parents, or where the parents of the child cannot be found, after a diligent search has been made, or where a parent is insane or otherwise incapacitated from giving such consent, and the court is of the opinion that the adoption is for the best interest of the child, or where the parents have surrendered all of their rights to said child to a licensed child-placing agency, or court of competent jurisdiction for adoption, or the State Department

of Public Welfare through its designated agents, or in the case of parents whose parental rights have been terminated by order of a juvenile or other court of competent jurisdiction, or where both parents are dead. Where a decree has been entered by a superior court ordering the father to support the child and the father has wantonly and wilfully failed to comply with the order for a period of 12 months or longer, consent of said father shall not be required and the consent of the mother alone shall suffice."

The question presented in this case is whether the existence of facts rendering the father's consent unnecessary may be determined ex parte, or only in a judicial proceeding of which the father has notice.

Because this question has not heretofore been specifically decided by the appellate courts of Georgia, we think it in order to review generally the relevant statutory and judicial doctrine.

It is the public policy of all States expressed in their statutes and court decisions that adoption of children generally shall be granted only with the consent of the natural parents. This policy is expressed in many court decisions: "We think the public policy of this State, as expressed in all of the adoption statutes . . . has been to protect the sanctity of the home and the natural relationship existing between parent and child by providing that no adoption of the normal offspring of worthy parents should be permitted except with the written consent of the living parents. . . Any other policy would, in our opinion, do violence to the fundamental concepts upon which our social order rests and would tend to establish a form of Statism not to be tolerated in this country." Lee v. Purvin, 285 S. W. 2d 405 (Texas Civil). "Consent of the natural parents is the jurisdictional foundation upon which our statutes of adoption are built." Burrell v. Simpson, 203 Ore. 472 (280 P. 2d 368). 1 Am. Jur. 642, § 40: ". . . consent, or its procedural equivalent, notice, forms the basis of a proceeding for adoption. It is a jurisdictional fact, a condition precedent, compliance with which is essential to full validity and effect of the decree. There can be no doubt that the rights of the parents cannot be cut off, in the absence of consent, unless they have had notice

of the proceeding and an opportunity to resist the action, in which event failure to appear might be regarded as equivalent to consent. . ."

The statutes of other States, like Georgia, provide exceptions to the rule that the consent of both parents is essential. They commonly dispense with the necessity for consent of a parent who has abandoned or failed to provide support for a child, or who has been deprived of custody in a proceeding adjudicating the child to be neglected and dependent, or who is insane, or against whom a divorce has been awarded on the grounds of extreme cruelty or adultery. Some statutes provide that when custody of a child has been awarded to one parent by a divorce decree, the consent of the other parent is not necessary to an adoption. When the consent of a parent is required but for ᴄ reason cannot be presented to the court, there can of course be ᴜᴏ adoption without notice, actual or constructive, to that parent. The statutes vary in the provisions for notice to parents whose consent is not required. Some explicitly require notice; and some state, or are construed to mean, that there need be no notice to a parent in one or more of the excepted classes. See In re Hardesty's Adoption, 150 Kan. 271 (92 P. 2d 49); In re Tindell, 292 P. 2d 1022 (Okla.); Olsen v. Davidson, 142 Colo. 205 (350 P. 2d 338); Byrd v. Byrd, 69 N. E. 2d 75 (Ohio Appeals); Mowery v. Ealey, 108 N. E. 2d 143 (Ohio Appeals). The exceptions are justified because the welfare of the child is considered paramount, and in some cases because the parent by his conduct is considered to have forfeited his parental rights. The "purpose of dispensing with consent . . . was to authorize the court to decree an adoption . . . even though the parents objected to such adoption or refused to give consent thereto. But the authority of the court to decree adoption in such cases without consent of the parents does not mean that such parents are not entitled to notice and an opportunity to be heard on the questions of insanity, imprisonment, and abandonment. . ." Child Sav. Inst. v. Knobel, 37 S. W. 2d 920 (Mo. Appeals). See 24 A. L. R. 416, 76 A. L. R. 1077; 1 Am. Jur. 642, § 40; 2 C. J. S. 422, § 38.

The courts of many States have dealt with the necessity of

notice to a parent whose consent to an adoption is not required. The majority of the cases follow or recognize the rule that notice to the parent is essential, to make the adoption binding on the parent, even though the adoption can be decreed without his consent and even though the statute may not expressly require notice to him.

In Nelson v. Ecklund, 68 N. D. 724 (283 N. W. 273), an adoption was declared void as to the natural father, who at the time the adoption petition was filed had been committed to a mental institution, and was assumed for the purpose of the decision to be insane. The court stated that, while his consent may not have been necessary, nevertheless he was entitled to notice of the proceedings. To the extent that the decree of adoption appeared to affect his rights it was declared void, and the lower court was directed to modify it accordingly.

It was said in that case: "It is true the statute makes no provision for notice, but adoption proceedings are judicial in their nature . . . and there can be no judicial hearing of any kind without notice to the parties affected. . . Silence of the statute cannot be construed as legislative intent that a parent may be judicially deprived of rights without notice. Because a statute makes no provision for notice does not say that notice is not required. . . If the statute be silent as to form, it becomes the duty of the court to devise some adequate form before a person may be divested of rights. Notice of proceedings is an essential requirement of justice before rights are terminated. . . . It is 'presumptively intended' that such proceedings should be in accordance with the usual practice of courts of record, and thereunder notice '. . . need not necessarily be a formal notice, though some notice and some appearance must be shown.' . . . 'No person shall be personally bound by a decree until he has his day in court, by which is meant, until he has been duly cited to appear, and has been afforded an opportunity to be heard. A judgment without such citation and opportunity wants all the attributes of a judicial determination.'" Adoption of Bascom, 126 Mont. 129 (246 P. 2d 223); In re Adoption of a Minor, 160 F. 2d 928; Storey v. Shumaker, 131 Colo. 131 (279 P. 2d 1057); In re Holder, 218 N. C. 136 (10

S. E. 2d 620) ; In Graham v. Lee, 204 Miss. 416 (37 So. 2d 735) ; In re Smith's Estate, 195 P. 2d 842 (Calif. App.) ; In re Zehner's Estate, 130 Neb. 375 (264 N. W. 891) ; Estate of Hampton, 55 Calif. App. 2d 543 (131 P. 2d 565) ; Ex Parte Gordon, 19 Wash. 2d 714 (144 P. 2d 238) ; Adams v. Brown, 237 S. W. 2d 232 (Mo. App.) ; In re Ives, 314 Mich. 690 (23 N. W. 2d 131) ; Ex Parte Parker, 195 Okla. 224 (156 P. 2d 584) ; Fielding v. Highsmith, 13 So. 2d 208 (Fla.) ; In re Whetstone, 188 So. 576, 578 (Fla.) ; Hughes v. Cain, 210 Ark. 476 (196 S. W. 2d 758) ; Smith v. Smith, 67 Idaho 349 (180 P. 2d 853) ; Skeggs v. Gannon, 293 Ky. 795 (170 S. W. 2d 12) ; In re Petrie, 40 Wash. 2d 809 (246 P. 2d 465) ; In re Adams, 248 S. W. 2d 63 (Mo. App.) ; State ex rel. Sheble, 92 Mont. 410 (115 P. 2d 238) ; Grider v. Grider, 182 Tenn. 406 (187 S. W. 2d 613) ; but see In re Hickman, 170 S. W. 2d 695 (Mo. App.). See also cases cited in 24 A.L.R. 416; 76 A.L.R. 1077.

Some of the cases hold and recognize, when the statute explicitly or implicitly requires notice and opportunity to be heard to a parent, that his right is satisfied when he is afforded in some proceeding subsequent to the adoption decree, a full hearing on the factual issue of the necessity of his consent. Lee v. Purvin, 285 S. W. 2d 405 (Texas Civil) ; Karns v. Kinkead, 236 Iowa 932 (20 N. W. 2d 474) ; People ex rel. Lentino v. Feser, 186 N. Y. S. 443 (195 App. Div. 90) ; People ex rel. Pickle v. Pickle, 213 N. Y. S. 70 (215 App. Div. 38) ; In re Davis' Adoption, 255 N. Y. S. 416, 425, 426 (142 Misc. Rep. 681). In re Asterbloom's Adoption, 63 Nev. 190 (165 P. 2d 157) ; Trotter v. Pollan, 311 S. W. 2d 723 (Texas Civil) ; Pitzenberger v. Schnack, 215 Iowa 466 (245 N. W. 713) ; Whetmore v. Fratello, 204 Ore. 316 (282 P. 2d 667).

The reason for the rule requiring notice has been expressed by the Florida court: "Even where adoption statutes do not specifically require personal notice . . . it must be presumed that the legislature intended that the natural parents should have an opportunity to be heard before having their rights to the child declared forfeited; if such statutes are to be upheld as constitutional . . . To adopt a contrary view would be to recognize that the courts have arbitrary authority to forfeit the

rights of the parent to his minor child, without giving him an opportunity to be heard in his own behalf. Such procedure would be despotic in the extreme and contrary to the plainest principles of morality and justice." Fielding v. Highsmith, 13 So. 2d 208, supra.

In resolving this question in Georgia the statutory provisions above quoted must be read in pari materia with each other.

One of the facts dispensing with the necessity of parental consent to an adoption, set out in *Code Ann.* § 74-404, is ". . . "where the parents of the child cannot be found, after a diligent search has been made." However, *Code Ann.* § 74-408 provides for service by publication on parties whose address is unknown.

As to some of the other facts stipulated in § 74-404 as dispensing with consent, the status of the parent has previously been judicially determined, for instance, where a parent is insane; where the parents have surrendered all their rights to a licensed child-placing agency, the State Department of Public Welfare, or a court of adoption (whereby they have consented to the child's adoption, but not to a particular adoption by named persons); or where the parent's rights have been terminated by order of a juvenile or other court. In such cases we presume (without deciding) there would be no necessity for service under the provisions of § 74-408.

However, when the father's conduct alleged as dispensing with consent is wilful and wanton noncompliance for 12 months with a superior court decree ordering him to support the child, and there has been no previous judicial determination of such wilful and wanton nonsupport, on a citation for contempt, a criminal proceeding, or otherwise, we are of the opinion that the appropriate service provisions (personal, by registered mail, or by publication) prescribed by § 74-408, must be strictly complied with in order for the adoption to be binding on such parent. The statutory requirements for service and notice in adoption cases are jurisdictional, and in a case where required service has not been perfected, the decree is void. *Respess v. Lites,* 81 Ga. App. 110 (57 S. E. 2d 869); *Beaver v. Akins,* 99 Ga. App. 729 (109 S. E. 2d 635). Want of proper process renders a proceeding void. *McGhee v. Mayor of Gainesville,*

78 Ga. 790, 792 (3 S. E. 670); *Davis v. Comer & Co.*, 108 Ga. 117 (33 S. E. 852, 75 Am. St. Rep. 33); *W. T. Rawleigh Co. v. Greenway*, 69 Ga. App. 590 (26 S. E. 2d 458). We must recognize that "A statute must be so construed, if fairly possible, as to avoid not only the conclusion that it is unconstitutional, but also grave doubts upon that score . . . . The language of a statute must be given a reasonable construction; and where susceptible of more than one meaning it should be interpreted consistently with the Constitution." *Forrester v. Culpepper*, 194 Ga. 744, 749 (22 S. E. 2d 595); *Tyler v. Huiet*, 199 Ga. 845 (36 S. E. 2d 358); *Fordham v. Sikes*, 141 Ga. 469 (81 S. E. 208); *Blackshear Mfg. Co. v. Talmadge*, 173 Ga. 703 (161 S. E. 256); *Sumter County v. Allen*, 193 Ga. 171, 174 (17 S. E. 2d 567); *Walker v. Employers Liability Assur. Corp.*, 66 Ga. App. 198, 200 (17 S. E. 2d 306); *Cook v. Cobb*, 72 Ga. App. 150 (33 S. E. 2d 366); *Evans v. Evans*, 190 Ga. 364, 369 (9 S. E. 2d 254); *Atlantic Loan Co. v. Peterson*, 181 Ga. 266 (182 S. E. 15); *Liner v. City of Rossville*, 212 Ga. 664 (94 S. E. 2d 862); *Connelly v. Balkcom*, 213 Ga. 491 (99 S. E. 2d 817). Accordingly, the adjudication by the trial court's interlocutory order of the existence of facts making the father's consent unnecessary, without any form of service or notice to the father, was void as to him. The overruling of the father's plea to the jurisdiction, and his ground on general demurrer that service was not made as provided by law, were, therefore, error.

For the reasons discussed below, however, these errors have not harmed the father and are not reversible.

After the hearings on his plea to the jurisdiction, and general demurrer, the father did not seek a continuance or decline to participate in the trial of his objections to the adoption. The trial, in which the issue again was whether the court, without the father's consent, had jurisdiction of the adoption, went forward with the father's acquiescence. He sought to defeat the jurisdiction by proof of facts showing that his consent to the adoption was necessary and by withholding his consent; i. e., he sought to refute the allegations of the petition that he wilfully and wantonly failed to comply with the support decree, and to show that no diligent search was made to locate him.

The court's order on Application for Adoption dated January 2, 1961, shows that at this trial the court reopened and afforded the father a full hearing on the question whether his consent was necessary—(which question had previously been determined ex parte): "The petition of Clifford Wayne Forshee for the adoption of Thomas Michael Carpenter, a minor, ten years of age, to which Deems E. Carpenter, has filed objection, coming on to be heard and after hearing evidence, argument, and considerations, the court is of the opinion that the said Deems E. Carpenter, the natural father of said minor, has wantonly and wilfully failed to comply with the order of the Superior Court of Cobb County, Georgia, dated July 16, 1951, to make weekly payments for the support of said child, for a period of more than twelve months, therefore, the consent of said party is not necessary in order that the adoption may be consummated. It is therefore ordered and adjudged that the objection of Deems E. Carpenter, natural father of Thomas Michael Carpenter is overruled and denied and it is ordered that adoption proceedings proceed as the law provides."

In this order the court ruled, adversely to the father's objection,. after a full hearing at which the father appeared and participated, that it had jurisdiction of the adoption without the father's consent.

The crucial issue tried was whether or not the court had authority to grant the adoption without the father's consent. If from the evidence it had been found that the father had not wilfully and wantonly violated the support decree for 12 months, it would have followed that his consent was necessary and, without it, the court had no jurisdiction of the adoption. *Allen v. Morgan*, 75 Ga. App. 738, 746 (44 S. E. 2d 500).

The finding of fact in the Temporary Order, entered without notice to or appearance by the father, on the necessity of the father's consent, was: " . . . and it further appearing to the court, that after the examination of the parties interested, in chambers, under oath, that the facts stated in the petition are true." The temporary order was revoked and the adjudication of this question of fact was superseded, after a full and complete

hearing, by the order of January 2, 1961. See *Allen v. Morgan,* 75 Ga. App. 738, 749, supra.

In Harmon v. Harmon, 245 N. C. 83 (95 S. E. 2d 355, 63 A. L. R. 2d 808), the North Carolina Supreme Court dealt with a substantially similar situation. The wife was served by publication with her husband's action for divorce, but a copy of the notice of service was not mailed to her as required by statute. After the judgment awarding a divorce to the husband, the wife filed a motion to vacate the judgment and to dismiss the action, on the ground that she had not been served with a copy of the notice of service by publication. The court set aside the judgment of divorce for defective service of process, then exercised its discretion and permitted the husband to complete the original service. The wife then set up a defense to the divorce action, and after trial, on the verdict of a jury, the court entered a judgment awarding a divorce to the husband. The wife appealed, assigning error on the trial court's refusal to dismiss the action and require the husband to reinstitute it. The Supreme Court held that the question with respect to the failure to dismiss the action was moot, since the wife had voluntarily and fully defended herself in the trial. See also Hollander v. Central Metal &c. Co., 109 Md. 131 (71 A. 442, 23 L. R. A. (NS) 1135).

In 5A C. J. S. 749, § 1682, it is stated: ". . . where no prejudice results, the erroneous . . . . absence of process or notice . . . or failure to obtain service of process on a party, will not operate to reverse a judgment."

3 Am. Jur. 563, § 1007: "One very common test which is applied in a variety of situations [for determining the prejudicial character of error] is whether or not the error affected the result . . . error can not be regarded as harmful, so as to require a reversal, unless, within reasonable probabilities, had the error not occurred, the result might have been materially more favorable to the one complaining of it." This is the accepted rule in Georgia. *Merck v. American Freehold Land Mortgage Co.,* 79 Ga. 213 (7 S. E. 265); *Main v. Simmons,* 2 Ga. App. 821 (59 S. E. 85); *Realty Co. v. Ellis,* 4 Ga. App. 402 (5) (61 S. E. 832); *Kitchand v. Davis,* 30 Ga. 686, 689. Only error in conjunction with harm constitutes reversible error. *Gamble v. Gamble,*

207 Ga. 380 (61 S. E. 2d 836); *McKenney v. Woodbury Banking Co'.*, 208 Ga. 616 (68 S. E. 2d 571).; *Scott v. Holden*, 69 Ga. App. 615 (26 S. E. 2d 456); *Smith v. McWhorter*, 173 Ga. 255 (160 S. E. 250); *Hogan v. Gilbert,* 27 Ga. App. 444 (108 S. E. 625); *Camden Fire Ins. Assn. v. Almand*, 39 Ga. App. 496 (147 S. E. 722). The plaintiff in error has the burden to show not only error, but that the error was prejudicial., *Jacobs v. Rittenbaum*, 193 Ga. 838 (20 S. E. 2d 425).

We believe a recognition of the lack of harm is implicit in those decisions in adoption cases holding or stating that a parent's right to notice is satisfied when he is afforded, subsequent to the adoption decree, a full hearing on the question whether his consent is required. Lee v. Purvin; Karns v. Kinkead; Trotter v. Pollan; In re Davis' Adoption; People ex rel. Lentino v. Feser; People ex rel. Pickle v. Pickle, all supra.

The hearing afforded the plaintiff in error, on the question whether his consent was necessary to give the court jurisdiction to decree the adoption, was no less than the opportunity for contest he would have had if he had had actual notice of or appeared at the interlocutory hearing or if he had been served in the manner prescribed by statute, by publication. It appears that the plaintiff in error has not suffered a miscarriage of justice because of the failure to serve him with the adoption petition and notice of interlocutory hearing or by the erroneous rulings on his plea to the jurisdiction and demurrer. The court's order overruling his objection and ordering that the adoption proceed, therefore, was not error.

■ The father contends that he did not wilfully and wantonly fail to comply with the support decree. The evidence, on the hearing on application for and objection to the adoption and motion to set aside the interlocutory decree, showed that the father was aware of the decree's provisions for support, that he had not made any of the payments required since 1954; that he had been employed steadily and had the money; that he had made no contact of any kind with the child or its mother for 4 or 5 years. He sought to justify his failure to make payments by testifying that the mother had told him she did not want the money as long as he would stay away (which testimony was

disputed) ; that the mother never contacted him or demanded payment; that he would have paid if asked; that he had put money aside for the benefit of the child. He admitted under cross-examination that the money he claimed was put aside was in a savings account opened a few days before the hearing, a part of which had been borrowed and the rest drawn from a credit union and other unrevealed sources. The father cites *Rawdin v. Conner*, 210 Ga. 512 (81 S. E. 2d 461) ; and *Brown v. Newsome*, 192 Ga. 43 (14 S. E. 2d 470), to support the contention that, since no demand had been made that he comply with the support decree, his violation was not wilful. These were cases brought by a father for custody of his child against the child's grandparents who had not demanded the father's support. In the first case no decree ordering support was involved. It was held that the fact that the father let the grandparents bear the financial burden did not demand a finding that he had lost his right to custody. These cases are not controlling in the present case.

In In re Kelley's Adoption, 47 Calif. App. 2d 577 (118 P. 2d 479), a father appealed from an adoption decree on the ground that his consent was required; that the evidence did not show he neglected to pay for support though able to do so. The court, affirming the adoption, pointed out that the record showed the father had been able to pay something for support. Though the mother, with the child, had moved and not notified the father of her address, the father did not use the mails as a means of communicating. The court then held: "It is clear the father was lax in endeavoring to locate the child; that he made no determined effort in good faith to discover its whereabouts or afford it support during the year before the adoption . . . The finding that he wilfully failed to support the child has foundation in fact."

In Jordet v. Wilkinson, 248 Minn. 433 (80 N. W. 2d 642), the court said that the parent is "insured the right and the opportunity to be heard in the proceeding when the propriety or the wisdom of the proposed adoption is adjudicated. He is, however, given no right of veto."

In Adoption of Burton, 305 P. 2d 185 (Calif. App.) the court

stated that the purpose of the California statute "would be defeated if a father who had failed to provide for his child under the conditions described in the statute could prevent the child's adoption with the consent of the mother alone by obtaining a change in the custody order [of another state], or making a support payment after the filing of the petition for adoption. A statute should not be interpreted in favor of a father who seeks the benefit of parental rights but shuns the burden of parental obligations."

A "wilful failure" imports a conscious, knowing, voluntary, intentional failure, a purpose or willingness to make the omission, rather than a mere inadvertent, accidental, involuntary, inattentive, inert, or passive omission. *King v. State*, 103 Ga. 263, 265 (30 S. E. 30); *Richardson v. State*, 43 Ga. App. 229 (158 S. E. 369); *McComas v. Glendinning*, 59 Ga. App. 234 (200 S. E. 304) ; 45 Words and Phrases, 186 et seq.

"Wanton" is most often used in connection with negligent acts rather than wilful acts. It implies a higher degree of misconduct, turpitude, rashness, or want of care than ordinary negligence— an act "so charged with indifference to the consequences as to be the equivalent in spirit of actual intent." *Arrington v. Trammell*, 83 Ga. App. 107 (62 S. E. 2d 451). See 44 Words and Phrases, 589 et seq. As used in the Georgia Adoption Act (Ga. L. 1941, p. 301, as amended, Ga. L. 1950, pp. 289, 290, *Code Ann.* § 74-404), "wantonly and wilfully" ("failed to comply with the order") means without reasonable excuse, with a conscious disregard of duty, willingly, voluntarily and intentionally.

The evidence supported the findings of facts and law in the court's order of January 2, 1961, set out above; and the rulings therein were not error.

*Judgment affirmed. Felton, C. J., and Bell, J., concur.*